# Barr *versus* Graybill.

To render valid a will, made before the passage of the act of 27th of January, 1848, where the testator died before the passage of that act, it must be signed by the testator, at the end thereof, with his name, not his mark, or his name signed thereto by some person, in his presence and by his express direction, and such execution must be proved by two witnesses.

Where one witness proved his signature to the will as a witness, and that he signed the name of the testator thereto, at his request; but where the other witness said he put his name to the instrument in the presence of the testator, but though he was brought there to sign as a witness, that the testator did not say any thing to him at the time the witness put his name thereto, and that the testator did not say any thing, that he can recollect, when the other witness spoke of signing the testator's name to the mark, this is not sufficient proof of the execution of the will.

ERROR to the court of Common Pleas of *Lancaster County*.

This was an issue in which John Barr was plaintiff, and Levi Graybill and Fanny Graybill were defendants, from the Register's Court of Lancaster county, in relation to the validity of an instrument of writing, purporting to be the last will and testament of Daniel Keeports, deceased, dated 12th day of August, 1843. A verdict was rendered against the will.

This case was before the Supreme Court on a former occasion, and is reported in 5 *Barr*, 441.

It is provided, in the sixth section of the revised act of 8th April, 1833, relating to last wills and testaments, that:

"Every will shall be in writing; and, unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof, or by some person in his presence and by his express direction; and in all cases shall be proved by the oaths or affirmations of two or more competent witnesses, otherwise such will shall be of no effect."

On the trial, Christian Hess, sworn.—(Paper shown of 12th August, 1843;) this is my signature as a witness; I saw Mr. Keeports *put his mark to it;* the name, "*Daniel Keeports,*" was signed by me *at his own request;* he was not able to sign himself, at least he said so; I believe he was not able, from bodily weakness; he was of sound and disposing mind and memory at the time; I drew the instrument; it was drawn according to his

[Barr *v.* Graybill.]

instructions; I read it over to him; I am a scrivener in the habit of writing wills; he sent for me to his house for that purpose; he was some eighty odd years, I believe; I am not positive; he died probably three weeks or a month after the execution; not positive; may not be so long.

Henry Carpenter, Esq., affirmed.—(Paper shown;) the name, Henry Carpenter, to this instrument is my signature; I saw Daniel Keeports make his mark; *he did not say anything to me at the time I put my name there;* I was called in and I witnessed it in his presence; 'Squire Hess and me went in together; This is the last time we had been in their house; *the 'Squire requested him to sign his name;* he said he felt weak and could not write; the 'Squire then asked him again, and he said he could not write his name, and he thought his mark would do as well; then we both said that we thought it would do, perhaps; he was on the bed; he got out then and come to the table *and made his mark;* then 'Squire Hess looked around to me and said, now I suppose I will write Daniel Keeports, his mark, will that do? and I said I supposed it would; I don't recollect any more, only putting our names to it; the old man got on the bed again. *Q.* "He was very weak at the time?" *A.* "It appeared so to me." The name, Daniel Keeports, was written by 'Squire Hess in his presence; when 'Squire Hess spoke about putting the name there, the old gentleman was sitting present at the time; I think he heard him; I can't tell whether he was taking any notice to Hess putting his name there; He was sitting at one end of the table at the time; *he did not say any thing, that I can recollect, when Hess spoke of signing his (K's) name to the mark;* Mr. Hess came for me to sign as a witness; on the road going he began saying it was troublesome to make a will for such a person, that he seemed a little forgetful, and he could not get him to understand it right."

Plaintiff now offers the paper, purporting to be the will, in evidence. Defendants object.

*Mr. Stevens.*—Dunlap *vs.* Dunlap, 10 *Watts,* 153; Cavett's Appeal, 8 *W. & S.* 21; Stricker *vs.* Groves, 5 *Wh.* 386.

*Mr. Parke.*—*Purd.* act of 1833; Report of Codifiers; 5 *Wh.* 386–97, Stricker *vs.* Groves.

The court concede that it is sufficiently proved to be submitted to the jury, that Daniel Keeports was prevented, by the extremity of his last illness, from signing his name. But the altenative is not sufficiently proved. It does not appear that the name was signed by the scrivener by the express directions of Daniel Keeports. The paper offered as the will is therefore rejected.

The plaintiff's counsel except, and the court seal this bill.

ELLIS LEWIS, [L. S.]

[Barr *v.* Graybill.]

Errors assigned:

1. In rejecting the will as not proved.
2. The court rejected the will erroneously, because it was for the jury to determine whether, as his name was put to it, at the end thereof, attested by two witnesses, it was not put there by his direction.

The case was argued by *Parke* for plaintiff in error.—The court ought to have admitted the will in evidence, Act relating to last wills and testaments of 8th April, 1833, sec. 6; supplement thereto of 27th January, 1848, pamphlet p. 16. It is enacted too by this act "that every last will and testament heretofore made, or hereafter to be made, excepting such as may have been finally adjudicated prior to the passage of this act, to which the testator's name is subscribed by his direction and authority, or to which the testator hath made his mark or cross, shall be deemed and taken to be valid in all respects: *Provided*, The other requisites under existing laws, are complied with."

Cavatt's Appeal, 8 *W. & S.* 21, referred to.

That a *mark* to a will was not execution, when *attested by two* witnesses, was a surprise to the bar as well as to the country.

That the will "shall be signed by him at the end thereof, or by some person in his presence, and by his express direction," are words, except "at the end thereof," copied *verbatim* by the codifiers, from the 29 *Car.* 2, chap. 3, sec. 5, relating to wills in England, in the sixth sec. of the bill relating to last wills and testaments in this state, and so enacted on the 8th April, 1833, as the mode by which wills would be valid.

Those words have always been held as complied with, by signing a will with a mark, 3 *Lev.* 1; *Buller, nisi prius*, 243; *Strange*, 764; *Douglass*, 229.

The same construction, therefore, ought to be given to these words as the known rule of their meaning, particularly since the act of 27th of January, 1848.

This case does not come within the exception of "such as have been finally adjudicated prior to the passage of this act," for a bill of exception was taken to the rejection at the time of trial, which is now the error assigned.

*Stevens*, contra.—One witness said he was requested by Keeports to sign his name as a witness; the other, that he did not recollect that he was requested to sign as a witness. 10 *Watts*, 153; 8 *W. & S.* 21. It is not asserted, in the attestation, that they signed as witnesses, at the request of the testator.

The opinion of the court was delivered by

GIBSON, C. J.—Greenough *vs.* Greenough, decided at the last

[Barr *v.* Graybill.]

Pittsburgh term, is essentially different from this case. In that, as in this, an attesting witness proved that the testator's name, not the mark, was written by the testator's direction, and in his presence; but the other could not recollect whether the testator directed the name to be written or not; he was unable to give testimony as to the particular fact. His memory, in respect to it, was extinct, and he himself legally dead. Had he been actually so, it is settled, by authorities referred to in the opinion, that his attestation would have stood for proof by a witness, for the reason that devisees are not to lose their estates because the witnesses to the will have lost their hold on life, or the faculty of recollection. But that is not the case in this instance. Hess, the scrivener, and an attesting witness, proves, as far as the testimony of a single witness can prove it, that he wrote the testator's name, at the end of the will, "at his own request," from which a jury might infer that he wrote it, in the words of the statute, "by his express direction," which means that the authority for it must be actively and positively conferred, not passively, by silent acquiescence. But the testimony of Carpenter, the only other witness who was called, not only falls short of full proof, but amounts to positive disproof. He professes to have heard and seen every thing that passed; to have forgotten nothing, and to have omitted nothing. He does not say so in terms; but he tells his story like a man who is confident of the details of it. He says, "I saw Daniel Keeports make his mark. He did not say any thing to me at the time I put my name thereto. I was called in, and witnessed it in his presence. 'Squire Hess and me went together. This is (was) the last time we had been in their house. The 'Squire requested him (the testator) to sign his name. He said he felt weak and could not write. The 'Squire asked him again, and he said he could not write his name, and he thought his mark would do as well. Then we both said that we thought it would do, perhaps. He was on the bed; he got out then and went to the table and made his mark. Then 'Squire Hess looked round to *me* and said, now I will write Daniel Keeports, his mark—will that do? And I said, I suppose it would. I don't recollect any more only putting our names to it. The old man got on the bed again. It appeared to me he was very weak at the time. The name, Daniel Keeports, was written by 'Squire Hess, in his presence. When 'Squire Hess spoke of putting the name there, the old gentleman was sitting present at the time. I think he heard him. I can't tell whether he was taking any notice of Hess putting his name there. He was sitting at one end of the table at the time. *He did not say any thing,* that I recollect, when Hess spoke of signing his name to the mark."

The deficiency of this testimony is its want of proof that the name of the testator was written by his express direction. The

[Barr *v.* Graybill.]

witness proves affirmatively *that it was not.* Hess doubtless thought that he had authority to write the name, on the ground that silence gives consent; but it certainly was not an express or a positive one, and the words of the statute are too stringent to be satisfied with less. The object was to prescribe a formality, though a simple one. The testimony of Carpenter not only falls short of proving such a direction, but absolutely disproves it; and as he professes to have heard and seen every thing that passed, there is no gap in his memory to be filled up with his attestation. The proof of execution, therefore, is incomplete.

Judgment affirmed.