## Vernon *versus* Kirk.

Where a testatrix requested another to sign a paper as her will, and he complied by signing "E. N., for R. D., at her request;" this is a sufficient execution of the will.

What constitutes sufficient proof of the execution of a will is a matter of law for the court.

Where a will is attested by two witnesses, if the memory of one of them is defective as to the circumstances attending its execution, the law presumes, after proof of attestation, the existence of everything else necessary to give the instrument validity.

The rule is different if the witness is able to recollect that things essential were positively wanting. There the presumption is changed.

Where the execution of a will is proved, it is not necessary to give evidence that the testatrix knew the contents of it.

Such evidence is only required where fraud, practice, or undue influence is charged and proved.

[Vernon *v.* Kirk.]

ERROR to the Common Pleas of *Philadelphia.*

This was an issue *devisavit vel non*, from the Register's Court of Philadelphia county, upon a paper alleged to be the will of Rachel Dougherty, deceased, in which Frances Vernon, a niece, and one of the heirs at law of the decedent, was plaintiff, and. George Kirk, one of the executors named in the alleged will, defendant.

It was alleged that the instrument offered for probate was not the last will and testament of Rachel Dougherty: 1. Because it was not signed by her, nor at her request, in the manner prescribed by law: 2. Because she did not know the contents thereof. There was also an allegation that it was obtained by undue influence and duress; but of this no evidence was given on the trial.

The alleged will, bearing date the 4th January 1849, was admitted to probate by the register, on the 15th February 1853, and letters of administration granted. From his decision an appeal was taken to the Register's Court, by Frances Vernon, on behalf of herself and the other heirs at law.

The instrument was signed "·Ezekiel Norman, for Rachel Doherty, at her request." This, it was objected, was not a sufficient execution, within the meaning of the Act of Assembly.

The two subscribing witnesses to the will were Dr. Lewis Rodman and Mary Ann. Norman, who testified as follows, as to the facts attending its execution.

*Lewis Rodman, affirmed.*—"I am one of the subscribing witnesses to the alleged will; took place at one of my daily visits while attending her. On that occasion I was asked to witness her will. I asked her if she knew the purport of the paper; she replied she did. I asked her if it was her will, or if she knew the purport of the paper, I don't remember which; she replied in the affirmative. I then signed it in the presence of the other witness. I then left the room. Mr. Norman and the other witness were present at the time, no one else. She said she knew the object of the paper. I believe I've told all that took place. I have no recollection of its having been read to her. Nothing said on the subject of having the will read. I did not see her execute the paper. Do not know whether she signed her name to it or not. She did not request any one to sign it for her, to my recollection. She did not request me to witness it as her will, as I remember. I signed it at the instance and request of Mr. Norman. I did not see her have the paper in her hands."

*Mary Ann Norman, affirmed.*—"Dr. Rodman, my father, and myself, were present. My father says,—Aunt will tell you. He stepped to the side of the bed, and said,—What's wanting with me? She says:—Doctor, I've been making a bit of a will, and I want you to witness it. He then says:—How have you made it? She said:—I've made it to my satisfaction, and left it all to my kind

[Vernon *v.* Kirk.]

friends and relations. She says to my father :—Now, Ezekiel, do you *get it* out of the drawer, and sign it for me. He got it out of the drawer, and she says:—That's it; now sign it. Dr. Rodman was present, and myself. My father signed it, and then Dr. Rodman picked it up, and read it long enough to read three or four lines, and then he signed it, and then I *signed it.* Dr. Rodman did not ask any questions of Mrs. Dougherty after signing it. Doctor asked if she owned this property. I saw my father sign it. Dr. Rodman heard the request for my father to sign the will. It was lying on top of the bureau, three or four feet from the bed."

The plaintiff's counsel contended that this was not sufficient proof of the execution of the will; or of the knowledge of the alleged testatrix of its contents. And they submitted the following points, upon which they requested the court to charge the jury :—

1. The signing "Ezekiel Norman for Rachel Doherty, at her request," is not a proper and legal execution of the paper as a will.

2. There is no sufficient proof of the execution of the alleged will, as the will of Rachel Dougherty.

3. The said Rachel Dougherty, being shown to have been an ignorant, uneducated woman, unable to read or write, and said paper being executed by the hand of another, there is no sufficient evidence that the same was ever read or the contents made known to her.

4. The jury must be satisfied that the specified testamentary dispositions contained in the alleged will were dictated and directed by her, otherwise their verdict should be for the plaintiff.

5. Since it has been shown that the alleged testatrix could not read, and that whatever knowledge she had of the contents of the paper came from Ezekiel Norman, a person interested, while he and she were alone together, her saying to two competent witnesses that she knew the purport, or that it was her bit of a will, is not sufficient to enable them to prove her knowledge of the contents of the paper.

In answer to which several points the learned judge charged the jury as follows :—

"As to the first point:—I charge you that the signing 'Ezekiel Norman for Rachel Doherty, at her request,' is in form a sufficient and legal execution of the paper as the will of Rachel Dougherty.

"As to the second point:—That is a question for you to determine; you have the testimony of Dr. Rodman and Miss Norman, the subscribing witnesses to the will; if their evidence satisfies you that Mrs. Dougherty directed Ezekiel Norman to sign the

[Vernon *v.* Kirk.]

paper for her, and the direction was complied with in her presence, the requisite proof of the will is made out.

" As to the third point :—That is also a question for you. If the evidence satisfies you that she knew the contents of the paper, it is sufficient.

" As to the fourth point :—I have already told you that you must be satisfied that the paper is the will of Mrs. Dougherty. If you are so satisfied, that is all that is required. If it contained any disposition that was not her will, it would render the whole instrument void, and it would not be her will.

" As to the fifth point :—This point, as submitted, contains an assumption of a fact which has not been proven, to wit, that Ezekiel Norman wrote the will; of this there is no evidence. As to her knowledge of the contents of the will, I have already said that is a question for you. You have the evidence, and it is a question for you to determine."

The plaintiff's counsel excepted to these answers, and the jury rendered a verdict for the defendant, sustaining the will; whereupon the plaintiff removed the cause to this court, and here assigned the said charge for error.

*Speakman* and *Broomall*, for the plaintiff in error.—The alleged will is not executed in accordance with the Act of Assembly, which requires the name of the testator to be signed at the end thereof, either by himself, or in case of his inability, by the hand of another : Hayes *v.* Harden, 6 *Barr* 409 ; Asay *v.* Hoover, 5 *Barr* 21. The name must be signed by *express direction* of the testatrix; a subsequent ratification is not sufficient : Dunlop *v.* Dunlop, 10 *Watts* 153.

The difference between a person signing for another in this form, and writing the true name, if done without authority, would be forgery : Long *v.* Zook, 1 *Harris* 400. It was error for the court to leave to the jury the question of the authentication of the will, by the requisite number of witnesses. This is a question of law. for the court : 1 *Sm. L.* 40 ; Lewis *v.* Lewis, 6 *S. & R.* 494 ; Hock *v.* Hock, *Id.* 48. The evidence of Dr. Rodman could not be construed into proof of an express direction emanating from Mrs. Dougherty to Mr. Norman, to sign her name to the paper.

As to the question of Mrs. Dougherty's knowledge of the contents of the alleged will, the law upon this subject, as everywhere settled and recognised by judicial decisions, is clearly stated in 1 *Williams on Executors* 16, 200 ; and see Harding *v.* Harding, 6 *Harris* 342 ; Harrison *v.* Rowan, 3 *W. C. C. R.* 585 ; Lewis *v.* Lewis, 6 *S. & R.* 496 ; Tomkins *v.* Tomkins, 1 *Bailey* 92 ; Harvey *v.* Anderson, 12 *Geo.* 69 ; Grabill *v.* Barr, 5 *Barr* 445.

*Mundy* and *Bell*, for the defendant in error.—All that the statute

[Vernon *v.* Kirk.]

requires is, that the name of the testator should be appended—the introduction of the name of the person who wrote it, is at best, but surplusage, and this, it is settled, will not vitiate : Barr *v.* Graybill, 1 *Harris* 396; Barker *v.* McFerran, 2 *Casey* 214. It is true that the question of proof necessary to the authentication of a will is matter of law for the court. But in answering the plaintiff's second point, the court below did not violate the rule. The jury were pointed to the testimony of Dr. Rodman and Miss Norman, as constituting the required proof. Nothing in that connexion was referred to the jury but the question of fact.

The positive testimony of one subscribing witness to the fact that he signed a testator's name to a will by his express direction, and the attestation of the will by the other subscribing witness who was present at its execution, but whose memory failed as to fact of express direction, is *primâ facie* evidence of express direction: Greenough *v.* Greenough, 1 *Jones* 498; Barker *v.* McFerran, 2 *Casey* 211–14; Barr *v.* Graybill, 1 *Harris* 396; Loomis *v.* Kellogg, 5 *Harris* 60.

It is said, that when one who makes a will is blind, or otherwise unable to read, it must be shown the contents of the will were known to him. This is, however, unnecessary where the testator can read; after proof of execution, whether the testator's name was appended by himself or by another under his direction, the instrument may go to the jury without evidence of knowledge of contents. This is only necessary after evidence of incapacity to read: Harding *v.* Harding, 6 *Harris* 342.

The opinion of the court was delivered by

Strong, J.—This was an issue of "*devisavit vel non*," sent from the Register's Court to try whether a certain writing was the will of Rachel Dougherty or not. To the charge of the court five errors are assigned. The signature of the alleged will was "Ezekiel Norman, for Rachel Doherty, at her request;" and the court below instructed the jury that such a signature was, in form, a sufficient and legal execution of the paper as the will of Rachel Dougherty; and of this the plaintiff in error first complains.

It was only by judicial construction that our statute of wills, passed April 8th, 1853, was made to require at the end of the will, the testator's signature *by his name.* Our act was taken from the British statute, 29 Charles II. sec. 2, under which it had repeatedly been decided that a signature by a mark was sufficient. When, therefore, the legislature adopted words having a recognised judicial signification, it might fairly have been presumed that they intended by the words that sense in which they were understood at the time of adoption. It is probable that they looked less to the *mode* of the signature, than to its *place*, which they required

[Vernon v. Kirk.]

to be at the end of the will. This appears still more probable, when it is observed that if the design was to require a signature by the name of the testator, then the power of making a will was denied to all who could not write; for if a mark was not a signature within the meaning of the statute, then those unable to write could not sign, and signing by another was permitted only when inability to sign was caused by the extremity of the last sickness. This seems to have been overlooked when Barr v. Graybill, Asay v. Hoover, and other kindred cases were decided. As already said, the purpose of the legislature seems rather to have been to designate the place where the signature should be, to wit, at the end of the will, than to prescribe the manner in which it should be made. It was to remedy the mischief, then prevalent, of setting up as a testamentary disposition an imperfect, unfinished paper. This was accomplished by requiring the signature, whatever it might be, whether by the testator, or by another at his request, to be at the end of the writing—thus evidencing that the testamentary purpose was complete. It was not, as was supposed in the earlier cases, to furnish, in the handwriting, evidence of identity, and protection against fraud; for the name might be signed by the testator or by another at his request, in which last case no such proof is deducible from the handwriting. The authentication of the instrument was left to the witnesses. The act of January 27th, 1848, *P. L.* 16, was designed only to correct the mistaken construction of the Act of 1833; and now, while the place of the signature is rigidly defined, its mode is left unfettered. If, therefore, the testatrix requested Ezekiel Norman to sign the paper as her will, and he complied with her request, in the manner already described, the requirements of the Act of Assembly were fulfilled; and, in form, the will was sufficiently executed. The instruction given to the jury, in this particular, was consequently correct.

The second and third assignments of error may be considered together. They are, that the court left to the jury the question whether the proof of the execution of the will was sufficient, when they should have instructed them that it was not. Undoubtedly, what constitutes sufficient proof of the execution of a will, is a matter of law for the court, and is not to be submitted to a jury; but the credibility of that sufficient proof is for them. That is all which was here submitted. But, even if it were not so, the plaintiff in error has no reason to complain, if the proof of the authentication of the paper by two witnesses was sufficient. Starting then with the fact, that the form of the signature was all that was requisite, as we have already shown, it remains only to inquire whether there was sufficient proof that the signature was made in Mrs. Dougherty's presence, and at her request. Mary Ann Norman, one of the subscribing witnesses, distinctly and

[Vernon *v.* Kirk.]

positively proves the whole. Dr. Rodman was the other witness. His memory is less distinct. Had he been *dead* at the time of the trial below, or beyond the jurisdiction of the court, or had he become 'interested after his signature as a witness to the will, proof of his signature would have rendered the evidence of the execution of the will complete: Greenough *v.* Greenough, 1 *Jones* 489; Barker *v.* McFerran, 2 *Casey* 211; Loomis *v.* Kellogg, 5 *Harris* 60. If the memory of the witness be partially or wholly gone, the law presumes, after proof of attestation, that everything else necessary to give the instrument validity existed. True, the rule is different, if the witness is able to recollect that things essential were positively wanting. Then the presumption is changed: Barr *v.* Graybill, 1 *Harris* 396. But in the present case, the defect of the witness, if any, was in failure of memory. He proved his attestation, and did not negative either a request by the testatrix that Norman should sign for her, or the signature in her presence. On the contrary, his testimony seems to prove affirmatively both the request and the signature in the presence of Mrs. Dougherty. In every aspect, therefore, of the case, the proof of the execution of the will was complete; and even if the court had erred in submitting that proof to the jury, it would have been a mistake in favour of the plaintiff in error.

All the remaining assignments relate to the instruction which the court gave to the jury, in reference to knowledge by the testatrix of the contents of the will. When the execution had been proved, the law raised the presumption affirmatively that she knew the contents. This presumption is drawn from the ordinary conduct of mankind. Men do not commonly sign papers without knowledge of what is embraced within them; and this is true alike of those who can read and of those who cannot. Where fraud, practice, or undue influence is charged and proved, affirmative proof of knowledge of the contents of a paper set up as a will may be necessary, but in no other case. The attempt of the plaintiff in error is to reverse this rule, and change the burden of proof. Without giving any evidence of fraud, practice, or undue influence, she asks that the jury may be so instructed that they may find fraud and imposition, merely from the absence of proof that the paper was read to the testatrix—she having been unable to read. This cannot be permitted. The cases in which affirmative proof of knowledge of contents has been held essential, after the execution of the paper has been shown, are, almost without exception, those in which such proof has been needed as an answer to a charge of imposition upon a testator: Lewis *v.* Lewis, 6 *S. & R.* 496.

Here the court below, instead of relying, as they might have done, upon the legal presumption which arose from proof of execution, submitted the matter to the jury, with instructions that

[Vernon *v.* Kirk.]

unless Rachel Dougherty did know the contents of the paper, and unless all its dispositions were hers, the whole instrument was void, and would not be her will. No more should have been asked, and no more could have been granted.

The judgment is affirmed.