## Picconi's Estate.

*Wills—Execution—Signature by mark—Wills Act of June 7, 1917.*

1. Under section 3 of the Wills Act of June 7, 1917, P. L. 403, authorizing signature by mark by an illiterate testator of a will "to which his name is subscribed in his presence and by his direction and authority," the signature by mark is bad where the testimony on behalf of the proponents is insufficient to afford a basis for reasonable inference that the testator was at any time cognizant of the fact that his name was written on the will, notwithstanding the fact that the will was written at his express request by the scrivener within a few feet of his bed.

*Semble.* The section should not be so rigorously interpreted as to require the name of the testator to be subscribed by his express direction and authority.

*Practice, O. C.—Refusal of auditing judge to allow witnesses to be recalled after the case is concluded.*

2. The refusal of the auditing judge to allow witnesses to be recalled after the case has been concluded is a matter within his discretion, and, in the absence of any abuse of discretion, the court *in banc* will not reverse.

*Practice, O. C.—Exceptions to decree of court in banc.*

3. Exceptions do not lie to a decree of the Orphans' Court *in banc.*

Appeal from Register of Wills.   O. C. Phila. Co., Jan. T., 1923, No. 527.

*Howard Lewis Fussell* and *Horace M. Rumsey,* for exceptant.

*Albert T. Hanby,* contra.

GEST, J., Jan. 15, 1924.—The question in this case is whether the paper writing purporting to be the last will of Camillo Picconi and signed by him with a mark was duly executed in conformity with section 3 of the Wills Act of 1917, which provides:

"If the testator be unable to sign his name, for any reason other than the extremity of his last sickness, a will to which his name is subscribed in his presence, by his direction and authority, and to which he makes his mark or cross, unless unable so to do, in which case the mark or cross shall not be required, shall be as valid as though he had signed his name thereto: Provided, that such will shall be proved by the oaths or affirmations of two or more competent witnesses."

The judge who presided at the hearing of this appeal reversed the decree of probate on the ground that the name of the testator, though written in his presence, was not written by his express authority and direction.

The testimony showed the following as the material facts of the case: Camillo Picconi was an Italian by birth, aged eighty years or over and unable to read or write. He was a widower, having two children, a son and a daughter, and lived with the latter after his wife's death until shortly before his death, when he went to a boarding-house kept by one of his countrymen, where he remained until he was taken, by reason of illness, to a hospital, where, after two weeks, he died. While the decedent was at his boarding-house, the will in dispute was executed, which, after his death, was admitted to probate by the Register of Wills, and, while the appeal was based not only on its alleged non-conformity with the Wills Act, but also on the alleged lack of testamentary capacity and undue influence, we need consider only the first objection, as the judge who presided at the hearing dismissed as entirely unproved the other grounds of appeal.

The scrivener of the will was a notary public and real estate agent, Phil A. Tenaglia, who was an acquaintance of the decedent. He testified that he received instructions for the will from Picconi, who was ill in bed, and, in his own language, "I wrote up that will as he told me. I expressed myself accord-

Picconi's Estate.

ing to the way he expressed to me, and after that I explained it to him. I told him, in Italian, word for word, what the meaning of it, and he said he was satisfied, it was his last will and wish and marked the sign for the cross." There was other testimony that showed that the testator understood the will as written and was satisfied with it, and when the scrivener asked him if he could write, he replied that he could not, whereupon, as the scrivener testified, he, the scrivener, said, "All right; you will make your cross. So he said, 'Yes.' I held the pen and he touched the pen and made the cross and I put alongside the cross 'his mark.' . . . I held the pen while he made the cross, and then after that I put 'his mark' on, and I put the name on one side and the second name on the other side of the mark." The writing was made by the scrivener on a washstand alongside the bed and about four feet away from it, and the scrivener then signed his own name as a witness. This was all in the presence of the two other witnesses, Orazio and D'Amico, the former of whom testified that he saw Picconi make his mark to the will; that he, Orazio, signed as a witness in the presence of Picconi and at his request. D'Amico testified that he also saw Picconi make his mark to the will and the notary signed the testator's name. Then Orazio signed as a witness, and after that D'Amico signed also. Frank Picconi, son of the testator, testified that, after the will had been executed and the witnesses had signed, the testator said he was satisfied and thanked the witnesses, and, while Frank Picconi is an interested witness, he was competent, and there seems no reason to suspect his credibility.

The questions, therefore, arising are two: First, must the name of the testator be subscribed by his express direction, which was the opinion of the judge who presided at the hearing, or may that direction and authority be implied? And, second, if this question be decided in the affirmative, are the facts in this case sufficient to show such implied direction and authority?

The Wills Act of April 8, 1833, § 6, P. L. 249, 4 Purd., 5120, provides, generally, that a will shall be in writing and signed by the testator at the end thereof, but it was held in this State, contrary to the current of English and American authority, that a will could not be properly signed with the testator's mark, Vernon v. Kirk, 30 Pa. 218, in which case it was said that the later Act of Jan. 27, 1848, P. L. 16, 4 Purd., 5126, was passed to correct this construction of the Act of 1833. The Act of 1848 applied in terms to wills to which the testator's name was subscribed by his direction and authority, or to which the testator had made his mark or cross, and, under this act and until the Wills Act of 1917, all that was necessary was that the testator should affix his mark and that his act should be proved by two witnesses. It is clear, however, that a material distinction exists between a signature and a mark, since in the latter case there is no individuality and all the characteristic features of handwriting are lacking. This was pointed out in Grabill v. Barr, 5 Pa. 441, where it was said: "A mark affords no criterion by which proof of it can be made, whereas the signature, even of a man wasted by disease, although his hand may tremble and vibrate, has some resemblance to what it was in a state of health; like the worn features of a dying man which still bear traces of what they were in his vigour." And the point is well illustrated by Shinkle v. Crock, 17 Pa. 159, where a witness who was not present at the execution of a will was allowed by the lower court to testify that the mark was genuine, on the ground that he was acquainted with the testator's mark and that it had certain peculiarities which distinguished it from others. The Supreme Court reversed on the ground that the admission of such testimony would open the door to fraud.

4 D. & C.

The 3rd section of the Act of 1917, above quoted, throws a further safeguard around the execution of wills of illiterates, and requires, first, that the testator's name be subscribed in his presence by his direction and authority; and, secondly, that he make his mark or cross, but this section does not require *express* direction and authority, as does the 2nd section applicable to another class of cases. The omission of this word is significant, for the two sections relate to the same general subject, and much stress is laid in Greenough *v.* Greenough, 11 Pa. 489, and Barr *v.* Graybill, 13 Pa. 396, upon the word "express" in the Act of 1833, from which section 2 of the Act of 1917 was derived. There is, besides, another notable difference in the phraseology employed. The words of section 3 are not merely "by his direction," but "by his direction and authority." Why is the word "authority" added? Surely not to emphasize the word "direction," for what a man directs he certainly authorizes. The word "authority," therefore, must mean something not amounting to actual direction, whether express or implied, but rather something equivalent to assent or ratification, the word "and," which connects the two words, being thus used in an explanatory sense, amplifying the word "direction." This section of the act, while intended to prevent the fraudulent execution or proof of wills, is, nevertheless, remedial in its main purpose of authorizing the use of a mark instead of a signature, and the safeguards introduced by it should not be so rigorously interpreted as to require that the name of the testator be subscribed by his express direction and authority.

It remains to be considered, however, whether the testimony in this case shows that this testator impliedly directed the scrivener to write his, the testator's, name to the will or ratified the act.

We have examined the testimony with care. It is clear that the name of the testator was subscribed in the room where he was lying in bed, and we do not think it important that his name was written after he had made his mark; in other words, the order is immaterial in which the mark is affixed and the name subscribed. The two requisites are connected in the statute merely by the conjunction "and," but there is nothing to indicate which should be made first in order of time, and where two things are necessary to complete a transaction, it is unavoidable that, in the phraseology of the statute prescribing both, one must of necessity be named before the other. It may be observed, however, that if the testator had affixed his mark to an instrument to which his name had already been subscribed in his presence, it might well be argued that his act amounted to a ratification of what appeared on the paper before him. This, however, was not the fact in the present case; the testator's name was written after he had made his mark, and the testimony is not sufficient to afford a basis for reasonable inference that he was at any time cognizant of the fact that his name had been written on the will. We are not convinced that the name of the testator was written by his direction or in such circumstances that he must have seen it so written, or that he ratified the act of the scrivener by anything that he said or did. We are, therefore, constrained to dismiss the exceptions filed to the decree of the judge who presided at the hearing of the appeal.

Exceptions were also filed to the refusal of the judge to allow the witnesses to be recalled after the case had been concluded. This was a matter that lay within the discretion of the judge, and his discretion is very wide. Unless it clearly appears that this discretion was abused, the court *in banc* will not undertake to reverse his action. In the present case it appears that the witnesses, having given their testimony as to the facts attending the execution of the will, were all recalled and further examined thereon, and full

Picconi's Estate.

opportunity was given to them and to the counsel for the exceptant to amplify and explain the circumstances of the case. In fact, the presiding judge himself directed their attention to the very matter of the execution of the will. These exceptions are also dismissed. There was a further petition by the exceptant for a rehearing, which was refused by the court *in banc*, but no exceptions can properly be filed to the decree entered thereon upon Nov. 15, 1923, Hazzard's Estate, 19 Dist. R. 671, so they also are dismissed.