Estate of Mattie Kisecker, deceased.    Appeal of George W. Harter.

*Wills—Evidence—Testamentary intent.*

Extrinsic collateral evidence is always competent to show that a paper was written and executed with testamentary intent.

*Wills—Publication—Acknowledgment.*

Where an instrument, proved to have been executed, is, by its terms, to take effect after the maker's death, no evidence of publication or acknowledgment on his part that it is a will is necessary.

*Wills—Form of will—Probate.*

Ten years before her death, decedent duly signed at the end thereof the following paper: "I this day, the 18th of December, 1888, give all my property real and personal to R. and V., but I am to have the use of all so long as I live and I to pay all the taxes and keep up repairs and after my death R. and V. is to have full and free use of all my property, for value received." The paper was never delivered to any one, but remained in the exclusive possession of decedent. At her request, a few days before her death, she had it read to her, and then, by her direction, it was put away in a safe place. *Held*, that the paper was properly admitted to probate as a will.

Argued March 6, 1899. Appeal, No. 301, Jan. T., 1898, by George Harter, from decree of O. C. Franklin Co., on appeal from register of wills. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Appeal from register of wills.

The facts appear by the opinion of STEWART, P. J., which was as follows:

The instrument here offered for probate has certain features which make it peculiar, but these are unimportant. With respect to wills, mere matter of form is of little consequence; none at all, where independent of it, the testamentary purpose is sufficiently disclosed. It may be an aid to the discovery of the intention, where this is not at once discoverable; but where it is, the form signifies nothing. The law prescribes no particular formula for wills. "It is sufficient that the instrument, however irregular in form or inartificial in expression, discloses the intention of the maker respecting the posthumous destina-

tion of his property, and if this appears to be the nature of its contents, any contrary title or designation which he may have given it will be disregarded:" 1 Jarman on Wills, p. 33.  The essential feature of a will is that it directs the posthumous destination of the maker's property.  A gift or conveyance of a present interest in the property is wholly inconsistent with testamentary purpose, and it is this feature of the instrument before us (construing the language used by its ordinary acceptation), that is most strongly urged against its probate.  The instrument reads as follows:

"I this day, the 18th of December, 1888, give all my property real and personal to Ruthy D. Long and Vesta A. Long, but I am to have the use of all so long as I live, and I to pay all the taxes and keep up repairs and after my death Ruthy D. Long and Vesta A. Long is to have full and free use of all my property, for value received."

It is urged on behalf of the contestant that there is neither uncertainty nor ambiguity in the language here used; that it expresses a purpose to grant and convey to the persons named a present right to the whole of the maker's estate, subject to her own life estate therein; and that no case is presented for resort to collateral or extrinsic evidence to discover the maker's intention.  If we have not been convinced of the correctness of this view, it is through no fault of the contestant's counsel. He has presented his side of the controversy with great ability, both in his oral argument and in the brief which he has submitted.  We might agree with his first proposition, to the extent only, however, that the language used in the instrument is apt enough to convey a present interest, were such object intended; but we cannot concede that it is so certain and direct as to necessarily exclude a testamentary intent.  Judged by the language alone, that is, allowing the paper to speak for itself, either a present conveyance or a posthumous disposition may have been intended.  The paper is no more inconsistent with the one than the other, while the terms used are such as are ordinarily employed in conveyances of present interest, yet considered connectedly and as a whole they seem to disclose a purpose that the instrument is not to take effect until after the death of the maker.  Were we shut off from all considerations other than those to be found in the paper itself, we would al-

low this latter view to prevail as the expressed intention of the maker. What little extrinsic evidence there is is only confirmatory of this conclusion, and there is no reason whatever why it may not be considered. This latter would be true, even though the paper was susceptible of only one construction, and that the one urged upon us by the contestant. Without regard to the form, it is always competent to adduce extrinsic, collateral evidence to show that it was written and executed with testamentary intent. Instruments conforming to and described as deeds, indentures, articles of agreement, letters of attorney, have been established through extrinsic evidence as wills, and as such admitted to probate. It is sufficient to refer to such cases as Turner v. Scott, 51 Pa. 130, Patterson v. English, 71 Pa. 456, and Scott's Est., 147 Pa. 100, to show how such recourse is sanctioned by our own Supreme Court. We state the present case as strongly for the contestant as the facts will warrant when we say that judged by its contents, the instrument may be either a present conveyance or a will; that whatever the intent of the maker in this respect, the end she wanted to accomplish is so far sufficiently expressed that it may be intelligently observed and enforced. All that remains to decide is, what did the maker herself understand the paper to be,—a conveyance of a present interest in her property, or one that was to take effect after her death ? Nothing short of a positive and unequivocal expression from the maker herself could more strongly negative the idea of an intention to convey presently than the facts and circumstances disclosed in the evidence. This paper was written and executed by the maker ten years before her death. It was never delivered to any one, but remained to the end in her exclusive possession, not that it had been forgotten and was overlooked, for, until four or five days before her death, she had kept it where she must frequently have seen it, and in the very place of all others where one in her situation would be most likely to keep a will, and least likely to keep a deed,—in her Bible. A very few days before her death, she directed an attendant to read it aloud in her hearing, and then to place it carefully away in some other place. To no one did she speak of it as her will, yet her retaining it in her possession in the manner she did, having it read over to her within a few days of her death, and then directing that it

be put away in some safe place, such circumstances point un-
mistakably to the conclusion that she herself regarded it as a
posthumous disposition of her property.   The case of Tozer v.
Jackson, 164 Pa. 384, shows very clearly that we do not give
undue significance to these undisputed facts.   In that case, as
here, the contention was that the instrument might have been
"intended only as a gift in the lifetime of the donor, and if so it
could not be operative as a testament."   The court held to the
view that the language used imported a will rather than a deed,
and entered into a lengthy examination of the facts and circum-
stances to see whether any other conclusion could there find
support.   Referring to the fact that the paper had never been
delivered in the lifetime of the maker, the court uses this lan-
guage: "It is manifest, therefore, that at the moment of the
death of James Rogers the paper was in his possession, and that
fact, alone, conclusively disproves the theory that he intended
it to take effect in his lifetime.   He had never delivered it,
there was not a particle of evidence to that effect, and it was
therefore inoperative as a gift in præsenti."   There is just as
little that is equivocal in language and facts of the present case
as in that, and there the court in deciding that the paper was a
will, say that "there is of necessity no room for any other in-
ference."

The objection that the proof falls short of statutory require-
ments is without substance.   It is true that there are cases
which recognize the doctrine that testamentary intent is an
essential link in the chain of evidence necessary to establish a
will, and like any other essential fact must be established by
two witnesses.   The cases of Scott's Est., supra, and Sunday's
Est., 167 Pa. 37, may be instanced.   But an examination of
these cases and all others to like effect will show that this rule
obtains only where no testamentary intent is derivable from
the instrument itself, indeed, only in cases where the nature
and form of the instrument are inconsistent with such intent.
Under such circumstances, where extrinsic evidence is relied
upon exclusively to show that the instrument was intended to
operate as a will, it is not difficult to understand why the stat-
utory requirements are held applicable.   But where form and
language used are entirely inconsistent with such intent, under
judicial construction, or the intent is fairly derivable from a

consideration of the entire instrument, the necessity for two witnesses relates only to the formal execution of the paper. Where an instrument is by its terms a disposition of property to take effect after the maker's death, no evidence of publication or acknowledgment on his part that it is a last will is required.   If legal proof be furnished of its execution, the law will presume that the maker signed it understandingly, and that he intended it to be his will.   In Loy v. Kennedy, 1 W. & S. 399, objection was made to the sufficiency of the proof because one of the witnesses testified that he heard testator acknowledge the instrument to be his act and deed.   The court there said : " Surely this is a good authentication of the instrument as a will, accompanied by proof that the party signing it was of sound disposing mind.   To require more would frequently do mischief, as a testator is frequently disposed to conceal the fact that the instrument executed is a will."   In Ginder v. Farnum, 10 Pa. 100, the court says : " The position taken by the counsel for the plaintiff in error, and so earnestly maintained by him is conceded.   Every circumstance and fact necessary to make the *execution* of the will valid, under the act of assembly, must be proved by two witnesses."   The italics are not ours, and hence the significance of the authority.   Says GIBSON, C. J., in Barnet's Appeal, 3 Rawle, 15 : " Where the paper contains the· substance of a will with the usual act of execution subjoined, although without the names of subscribing witnesses, the fact that it was thus found in the decedent's possession, ought without actual publication, to be taken for prima facie evidence of its having been adopted as a testamentary act."

Every circumstance and condition here expressed may be found in the present case.   The paper contains the substance of a will ; it is without attesting witnesses, but the authenticity is fully established by two witnesses who heard from the maker an acknowledgment of its execution ; it was found in decedent's possession.   Even though the law were otherwise than we have thus stated it, the sufficiency of the proof as to publication of testamentary intent could not well be denied.   The facts testified to by the two witnesses who were present at the reading of the paper to Mrs. Kisecker a few days before she died, constitute a full equivalent for a direct acknowledgment by her that the

instrument was her last will, and was to become operative at her death.

Being therefore of opinion that the paper propounded is sufficiently proved as the last will and testament of Mattie Kisecker, it is now, July 21, A. D. 1898, ordered that the register admit the same to probate as such.

*Error assigned* was the decree of the court.

*William S. Hoerner,* for appellent, cited Patterson v. English, 71 Pa. 454; Hancock's App., 112 Pa. 541; Middleswarth v. Blackmore, 74 Pa. 414; Nathans v. Morris, 4 Wh. 388; Asay v. Hoover, 5 Pa. 21; 1 Williams on Executors, p. 9; Bender v. Dietrick, 7 W. & S. 284; Faulstich's Est., 154 Pa. 188; Dunlap's App., 116 Pa. 500; Weber's App., 17 Pa. 474; Roberts v. Welch, 46 Vt. 164; Sunday's Est., 167 Pa. 30; Scott's Est., 147 Pa. 89; Derr v. Greenawalt, 76 Pa. 239; Sweet v. Boardman, 1 Mass. 258; Beebe v. McKenzie, 19 Ore. 296; Swails v. Bushart, 2 Head (Tenn.), 561; Skerrett's Est., 67 Cal. 585; Griffith v. Marsh, 86 Ala. 302; Hall v. Burkham, 59 Ala. 349; Golding v. Golding, 24 Ala. 123; Williams v. Tolbert, 66 Ga. 127; Edwards v. Smith, 35 Miss. 196; Sharp v. Hall, 86 Ala. 110; Knowlson v. Fleming, 165 Pa. 10; Book v. Book, 104 Pa. 240; Magoohan's App., 117 Pa. 238; Lines v. Lines, 142 Pa. 149; Plumstead's App., 4 S. & R. 545; Ritter's App., 59 Pa. 9; Holt's Est., 39 Pitts. L. J. 335; Phillips v. Swank, 120 Pa. 76; McKinney v. Rhoads, 5 W. 343.

*J. R. Ruthrauff,* for appellees, cited Patterson v. English, 71 Pa. 458; Frew v. Clarke, 80 Pa. 178; Tozer v. Jackson, 164 Pa. 373.

PER CURIAM, March 27, 1899:

The paper in controversy was undoubtedly testamentary. It was to take effect after the death of the testator. It was in writing and was signed at the end thereof by the deceased. The opinion of the learned court below covers every contention of the appellant so fully, and so entirely to our satisfaction, that we affirm the decree for the reasons there stated.

Decree affirmed and appeal dismissed at the cost of the appellant.