## Estate of Mary Diehl, deceased.   Appeal of Henry Lenherr.

*Devisavit vel non—Rule for determination.*

In determining whether a paper is or is not testamentary the settled principle of adjudication is to be derived from the language of the paper itself and the circumstances surrounding its execution and preservation. It must answer the question, Did the author of it intend the writing to be a disposition of his property to take effect after his death? The form is immaterial if the substance is testamentary.

*Words and phrases—Proof of will—Extrinsic evidence.*

The words, "I have given (not bequeathed)" do not preclude a writing from being testamentary if the balance thereof and surrounding circumstances of preservation indicate a testamentary posthumous disposition of property thereby given. Such a writing does not present a case where no testamentary intent is apparent on the face of the instrument and where it must be proven exclusively by extrinsic evidence.

Argued March 22, 1899. Appeal, No. 33, March T., 1899, by Henry Lenherr, from decree of O. C. Franklin Co., refusing issue d. v. n., and dismissing appeal from register of wills admitting to probate a certain paper as the last will of decedent. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by RICE, P. J. W. W. PORTER and W. D. PORTER, JJ., dissent.

Appeal from decree of register admitting to probate a certain paper as the last will of decedent. Before STEWART, P. J.

It appears from the record that the paper admitted to probate as a will was as follows:

"GREENCASTLE, January 1st, 1890.
"I have given (not bequeathed) Six Hundred Dollars or more, if necessary, to put a good iron fence around the grave-

294      DIEHL'S ESTATE.  LENHERR'S APPEAL.

Statement of Facts—Opinion of the Court.    [11 Pa. Superior Ct.
yard near the Lutheran Church in this place.   I refer to the
graveyard where my parents and sisters and brothers are buried.
I wish the fence to be put up just as soon as the money can be
collected for to have it put there.   This is my wish.

"MARY DIEHL.

"Witness:

"SARAH SHULL."


The court below dismissed the appeal and refused an issue
d. v. n. in the following opinion:

Is the paper that has been admitted to probate sufficiently
established as a last will?   The genuineness of the signature
is not denied, nor is the adequacy of the proof on that subject
disputed, but it is contended that the testamentary intent re-
mains to be established; that such intent cannot be gathered
from the paper itself, and that it has not been supplied by the
requisite number of witnesses.   To maintain the present appeal
both these propositions must be affirmed, whereas we find our-
selves unable to assent to either.

But for two expressions in the written paper, its testamen-
tary character would not be open to question.   Their united
force, in our judgment, is not sufficient to overcome the plain
import of the paper as a whole, and the direct and unequivocal
expressions it contains indicating a purpose that it was to
operate after the maker's death.

The paper begins, "I have given (not bequeathed) six hun-
dred dollars or more, if necessary, to put a good iron fence
around the graveyard," etc.   In this one sentence we have the
two expressions which are thought to negative testamentary
purpose.   The first, it is contended, imports a previous gift,
from the use of the past tense; and it is argued that what fol-
lows is simply a direction or request that money which had
already been given, and over which the donor had no control,
should be employed in a certain way.   But this contention
ignores entirely the words which immediately follow, "or more,
if necessary."   While it is not giving to language its usual and
ordinary meaning, to make the words "I have given" express
a purpose for the future, yet it would be a still wider departure
to hold that "more, if necessary" imported an executed and
completed gift.   It would seem a necessary inference from

these words, implying future action in connection with the very body of the gift itself, that the preceding expression was a mistaken use of language. But even were it otherwise, the mere fact that the will speaks in the past tense can be allowed but little significance. In Black v. Jobling, L. R. 1 Prob. & Div. 685, cited in the opinion of the court below in Fouché's Estate, 147 Pa. 398, it is said, speaking to this very point, " that it (the will) speaks in the past tense is nothing."

Nor are we inclined to give much weight to the argument derived from the particular parenthetical expression, " not bequeathed." In Boyd v. Bigham, 4 Pa. 108, it is said that " though every word in a will is to have effect when it may, it follows not that any words must have effect to subvert the testator's whole design."

Giving to these words their utmost significance in the interest of the appellants, they imply that the testatrix did not understand the paper she was signing to be a will, that is, a legitima dispositio. But it is not her understanding of the legal effect of the paper that we are to inquire after. We are concerned only with her intention as expressed in the writing. Says WOODWARD, C. J., in Turner v. Scott, 51 Pa. 126, 134 : " It signifies nothing that the parties meant to make a deed instead of a will. If they have used language which the law holds to be testamentary, their intention is to be gathered from the legal import of the words they have employed, for all parties must be judged by the legal meaning of their words."

It is not an uncommon notion that the making of a will accelerates the period of death. It is more than possible that these words " not bequeathed," were introduced because of some such dread, and the same feeling may account for the use of the earlier expression. The testatrix may have thought to avert this fate by distinguishing between the paper she executed and what she understood to be a formal will. We think it altogether likely, whatever the motive may have been, that the writing was signed without any expectation that it would or could be proven as a will; that it was intended as a disposition of so much of the maker's estate, which would not need the enforcement of the law, but which would be observed by her kindred and heirs; but all the same to take effect after her death. The law will not allow her wishes to be defeated because of

any such mistaken notion on her part as to what the law requires in a last will. The true principle to be deduced from the authorities appears to be, that if there is proof, either in the paper itself, or from clear evidence dehors, first, that it was the intention of the writer to convey the benefits by the instrument which would be conveyed by it, if considered as a will; secondly, that death was the event that was to give effect to it, then, whatever may be the form, it may be admitted as testamentary: Sunday's Estate, 167 Pa. 30.

So persuasive is the paper itself of testamentary intent, that we deem it unnecessary to consider at length the evidence dehors that was offered in support. It is enough to say that it is none the less satisfactory or convincing. Judged of by itself, it meets the requirements of the law, and in the proof of the handwriting of Mrs. Sarah Shull, the deceased subscribing witness, and in the evidence of Mary Shull, the daughter, we have the necessary proof by two witnesses, and every circumstance in connection with the will gives support to the contention that the paper in question is the last will and testament of Mary Diehl.

And now, December 28, 1898, the appeal is dismissed.

Henry Lenherr appealed.

*Error assigned* among others was in holding that the paper admitted to probate as the will of Mary Diehl, deceased, was a testamentary paper.

*O. C. Bowers*, with him *George W. Atherton*, for appellant.— The paper admitted to probate is not, upon its face, testamentary, for the following reasons : (*a*) It is not ambulatory or revocable in its nature; (*b*) it does not depend for its fulfillment upon the death of Mary Diehl, the maker; (*c*) it gives nothing either presently or at her death, but simply refers to a previous gift; (*d*) it does not purport to make a gift or bequest, but, on the contrary, it expressly negatives that idea.

The words are not "I give," or "I bequeath," but "I have given." If the reference was to a gift already made then it was not revocable, the instrument was not ambulatory in its nature and therefore not testamentary.

Not content with these words, however, the maker of the

paper, in order that the instrument might not under any circumstances be construed to be testamentary, adds, in parentheses, the words "not bequeathed," thereby positively and expressly negativing any idea of a testamentary gift that might otherwise be gathered from the instrument.

It is a fundamental rule in the construction of papers of this kind that no word which throws light upon the intention of the maker thereof is to be disregarded.

In order to make this paper testamentary not only must violence be done to the first expression, which refers to a past act and not to a proposed future one, but the expressive words, carefully inserted by the maker of the paper to prevent any suggestion that it might be testamentary, must be entirely ignored.

After a somewhat laborious search we have not been able to find any adjudicated cases bearing sufficient resemblance to the case at bar to make them of any great value in aiding the court in the construction of this paper, even by way of analogy: Ritter's Appeal, 59 Pa. 9; Patterson v. English, 71 Pa. 454; Book v. Book, 104 Pa. 240; Magoohan's Appeal, 117 Pa. 238; Lines v. Lines, 142 Pa 149.

The paper not being testamentary in form, and no testamentary intent being derivable from the instrument itself, at least two witnesses are necessary, under the statute, to give it a testamentary character: Comb's Appeal, 105 Pa. 155; Scott's Estate, 147 Pa. 89; Sunday's Estate, 167 Pa. 30; Hock v. Hock, 6 S. & R. 47; Scott's Est., 147 Pa. 89, 100.

*W. U. Brewer* for appellee.—In Pennsylvania, the principle referred to has been applied in a most liberal manner to sustain as wills many unique and informal writings. In this respect our state occupies a most advanced position. Indeed it is safe to say, the most advanced position.

Little regard is paid to form in a will. The intention of the party making the instrument controls. The controlling question in this case is this : Did the maker intend the paper to take effect in her lifetime or after her death? This intention is to be gathered from the paper, from the party's situation in life and from all the surrounding circumstances.

The learned counsel for the appellants contend the paper is

something else, rather than a will, because of the words " I have given (not bequeathed)." The words "not bequeathed" are wholly without significance when read with the context.

All that can be profitably said about them, was said by the learned judge of the orphans' court. The testatrix may not have clearly apprehended the words, or she may have had a confused idea of their meaning and legal effect. She may have supposed that by their use she could exonerate her gift from the burden of collateral tax.

OPINION BY RICE, P. J., July 28, 1899:

The paper admitted to probate as the will of Mary Diehl, is in these words:

" GREENCASTLE, January 1st, 1890.

" I have given (not bequeathed) Six Hundred Dollars or more, if necessary, to put a good iron fence around the graveyard near the Lutheran Church in this place. I refer to the graveyard where my parents and sisters and brothers are buried. I wish the fence to be put up just as soon as the money can be collected for to have it put there. This is my wish.

" MARY DIEHL.

" Witness:

" SARAH SHULL."

Was this writing intended to be a disposition of property to take effect after death, or was it, as the appellant contends, a mere declaration or acknowledgment of a previous gift?

This is the only question raised on this appeal. In determining it, we are to look not only at the language of the inartificially drawn paper, but also at the circumstances of its execution and preservation. " In cases such as this," to adopt the language of Justice DEAN in a recent case, "precedents rarely afford much aid. We start with the settled principle controlling the adjudication in all of them, namely, from the language of the paper itself, and the circumstances surrounding its execution and preservation, did the author of it intend the writing to be a disposition of his or her property to take effect after death? The absence of sameness of expression and the wide variations in facts in nearly all cases compel a conclusion from the language and circumstances of the particular case: " Gaston's

Estate, 188 Pa. 374.  Looking first at the language of the paper, we notice that although the decedent used the past tense, the immediate context shows that her directions to make the gift effectual were to be carried out in the future.  The amount of money that was to be devoted to the use named was uncertain.  It was "six hundred dollars or more, if necessary," and was to be collected.  Transposing the words, but not changing the thought, her intention might be expressed thus : " It is my wish that six hundred dollars, or more if necessary, be collected and used to put a good iron fence around the graveyard," etc.  If she had already made a gift, a direction that the money be collected was unnecessary and futile.  That she did make it, taken in connection with the uncertainty of the amount, clearly implies that she had not parted with the money, and goes very far to show that she had not parted with her dominion over the property from which it was to be collected.  In the absence of other evidence, it repels the conclusion that, in the use of the words "have given," she meant that she had previously made an irrevocable disposition of her property by gift.  Read with the context, these words may fairly be construed to mean that she had previously decided to devote so much of her estate as might be necessary, to the purpose named, and possibly had declared this intention to those having control of the graveyard, and now put her intention in writing.  Or they may have been used in the sense in which they would be read in the future, namely, when the directions of the paper would go into effect.  The form of the instrument is immaterial if its substance is testamentary, and that it speaks in the past tense and not in the present, is not conclusive: Black v. Jobling, L. R. 1 Prob. & Div. 685, cited with approval in Fouché's Estate, 147 Pa. 395 ; Goods of W. Coles, L. R. 2 Prob. & Div. 362.  In the last cited case, the dispositive words were, " I have given all that I have to Bertha Chamberlain and her two sons," etc.  The court said : " Although this paper contains the word given instead of give, the court cannot hesitate to say that the testator meant that the property should pass on his death ; he could not mean to make over all his property to the persons mentioned at once.  It is, I think, obvious that there is greater probability that the testator intended the parties to take on his death, than that he should denude himself of everything in his lifetime.  This last supposition is most improbable."

If the paper had been drawn by a lawyer, the parenthetical expression, "not bequeathed," would tend to repel the conclusion that the disposition of the property was not to take effect until after death. But drawn as it was by the decedent herself, and being wholly inartificial, no conclusive effect can be given to the words. It seems extremely improbable, if she were speaking of a past executed gift, and understood the meaning of the term "bequeathed," that she would say that it was not a bequest. It is more likely that she was speaking of the disposition she was then making, and whilst the expression is not to be disregarded in arriving at her intention, yet, if looking at the instrument as a whole, and the circumstances of its execution and preservation, she intended the disposition to take effect after death, her declaration that it was not a bequest would not prevent the admission of the paper to probate. "It is sufficient that the instrument, however irregular in form or inartificial in expression, discloses the intention of the maker respecting the posthumous destination of her property, and if this appears to be the nature of its contents, any contrary title or designation which he may have given it will be disregarded:" 1 Jarman on Wills, 33; Kisecker's Estate, 190 Pa. 476. It is unnecessary to multiply the citation of authorities, or to attempt to add anything further to what the learned judge of the court below has so well said as to this parenthetical expression.

Looking now at the circumstances, it is to be observed, that there is not the slightest evidence outside the paper, that she had made a gift to the church authorities—a fact which could easily have been proved if it had existed; that she was an aged woman, dependent wholly upon the income of an estate which at no time was large enough to reasonably warrant a gift in her lifetime of so large a sum; that the paper was written by herself; that she had it witnessed; and, finally, that it never was delivered to any one, but was carefully kept amongst her valuable papers where it was found after her death. We think it sufficiently clear upon the face of the paper, that it was not a mere declaration or acknowledgment of a past gift, and these facts and circumstances which we have just recited, are wholly inconsistent with a supposition that she intended her expressed "wish" to be carried out during her lifetime. As to the sig-

nificance of the fact that the paper was not delivered, but was carefully kept amongst her valuable papers, we refer to the cases of Tozer v. Jackson, 164 Pa. 373, 381; Kisecker's Estate, 190 Pa. 476.

In addition, there is the testimony of Mary Shull, a niece, who saw her mother witness the paper at the decedent's request, that the latter declared it was her will, or to quote from her testimony, "It may be that she said this was her wish." Considerable stress is laid on the uncertainty of the witness's memory as to the exact word used. But we do not regard this as invalidating or materially weakening the testimony. The word was used by the decedent to designate the paper which she asked her sister to witness, and as used in that connection, it is of little consequence whether it was "will" or "wish." The dispositive words of the will admitted to probate in Gaston's Estate, supra, "It is my wish," were held in a convincing opinion by Justice DEAN to be equivalent to "It is my will." There is the further testimony of Matilda Foust, which we quote: "She said she had made provisions for that after her death, that she would like to have an iron fence put around the Lutheran graveyard. I said, 'Miss Mary, be sure to have it in black and white.' She said, 'Tillie, it is in black and white. It is all right.'" Anna M. Cline also testified: "Before she died, I was up to see her, and she told me that her desire was to have a good iron fence put around the Lutheran graveyard, and that she would do it now but she hadn't got the money while she was living:" It is not claimed that the testimony of the last two witnesses would be sufficient to establish the testamentary character of the paper. It is, however, strongly persuasive evidence in support of that contention, and is undoubtedly competent. But omitting it from consideration altogether, there remains sufficient proof of the execution of the paper and of its testamentary character to warrant its admission to probate.

This is not a case where no testamentary intent is apparent on the face of the instrument, and where it must be proven exclusively by extrinsic evidence. In such cases, the authorities seem to hold that two witnesses are necessary, each of whom must separately depose to all facts necessary, to complete the chain of evidence, so that if only one witness were required

302    DIEHL'S ESTATE. LENHERR'S APPEAL.

Opinion of the Court—Dissenting Opinion.    [11 Pa. Superior Ct.

the will would be fully proved by the testimony of either. That rule does not apply, certainly not in all its strictness, to a case where a testamentary intent is entirely consistent with the language of the paper fairly construed in the light of the facts as to its execution and preservation. This is well shown in the opinion of Judge STEWART, approved by the Supreme Court in Kisecker's Estate, supra.

The decree is affirmed, and the appeal dismissed at the cost of the appellant.

WILLIAM W. PORTER, J., dissenting:

I dissent from the opinion of the court because I am convinced that the document admitted to probate is not a will. Nowhere does an intention appear, on the part of the decedent, to die testate in respect to her estate. The words of the document relate to an act partially if not wholly consummated. By the use of the words "not bequeathed" the decedent expressly negatives a testamentary intent and discloses a knowledge of legal phraseology which raises a presumption that, had she intended the document to be testamentary, she could have clearly expressed such intention.

The use of the words, "This is my wish," under some circumstances, might be equivalent to saying, "This is my will." This language, however, does not make the paper testamentary in view of the assertion that the declaration is not a bequest. I am of opinion that it requires the court to travel beyond the instrument to find any intent on the part of the decedent to dispose of any part of her estate, to take effect after death. The paper would better be construed to be a declaration that she has made a gift or a promise to give to the purpose expressed. The reference to the collection of the money is consistent with such a construction. It is quite common to speak of a promise to give as a gift already made. The donor or promisor, not having the means to make the payment at once, intended that the money should be collected by herself or on her behalf, and applied as soon as possible. The thing to be done is not deferred until after death. The gift does not affect her own place of burial. The acts to be done are not those performable only by executors or administrators. I can find nothing in the case, save the testimony of one or more witnesses who say that the

decedent referred to the paper as a will and the fact that the paper was found in the decedent's possession, to support the view that the document was in purpose testamentary.

W. D. PORTER, J., concurs in the dissent.