## Steiger Estate

*Blank, Rudenko, Klaus & Rome*, for appellant.
*Miller, Adelman & Lavine*, contra.

KLEIN, P. J., December 30, 1958.—Carrie S. Thomson died on October 17, 1957. She was survived by her husband, Joseph Thomson; her mother, Fannie Steiger, and two brothers, Sidney M. Steiger and Martin L. Steiger. An undated will, conceded by the parties in interest to have been executed in the summer of 1942, was admitted to probate on November 1, 1957. Under the provisions of this will testatrix left her entire estate to her father, Nathan Steiger, or in case he should die in testatrix' lifetime (which, in fact, occurred), to her brother, Sidney M. Steiger, whom she appointed executor.

The will is typewritten on a single legal-size page and is stapled to the conventional blue legal backer. The word "over", in the handwriting of decedent, appears on the face of the will below the signature. There were also two notations in testatrix' own handwriting on the inside of the backer. These writings are as follows:

"2/6/48

"Sidney, I trust that you will help to care for Mother during her lifetime. Carrie."

"7/1/52

"Ditto—also help Neal and Carol have a good and full life. Carrie S. Thomson."

Neal and Carol, mentioned in the second notation, are the children of Martin L. Steiger, decedent's brother.

Sidney M. Steiger filed an appeal from the register's decree admitting the will to probate. On August 22, 1958, a citation was issued to show cause why the decree of probate should not be opened "to permit the Register of Wills to receive and act upon a petition for probate of later writings dated the sixth day of February, 1946, and the first day of July, 1952, as codicils to the Last Will and Testament of the decedent, or as

an holographic Last Will and Testament of the decedent dated the first day of July, 1952".

At first glance it might be difficult to understand what prompted Sidney M. Steiger to file this appeal. He is not only the sole beneficiary but also the executor named in the will. A more careful study of the situation reveals, however, that his purpose in appealing is to challenge the right of his brother-in-law, Joseph Thomson, to the $10,000 allowance to which he has made claim.

Testatrix was unmarried when she made her will in 1942, but married the said Joseph Thomson on July 1, 1946. Her estate, according to the petition for probate and letters testamentary, consists of $10,000 in personalty and no real estate.

The Wills Act of April 24, 1947, P. L. 89, provides:

"Section 7. Modification by Circumstances.—Wills shall be modified upon the occurrence of any of the following circumstances, among others:

"(3) Marriage. If the testator marries after making a will, the surviving spouse shall receive the share of the estate to which he would have been entitled had the testator died intestate, unless the will shall give him a greater share."

Since decedent died without leaving issue, the surviving husband would be entitled, under this section of the Wills Act, to the first $10,000 and one half of the balance of the estate, if testatrix failed to make a will after the instrument executed in 1942. The $10,000 allowance, itself, would therefore consume the entire estate if the 1942 writing is testatrix' last and complete will: Intestate Act of April 24, 1947, P. L. 80, sec. 2(3), 20 PS §1.2. On the other hand, if the contention of the executor is correct, the notation of July 1, 1952, would constitute a republication of the will after the date of testatrix' marriage and the surviving husband would not be entitled to the $10,000 allow-

ance. He would be entitled to receive only his elective one half of the balance of the estate, or about $5,000.

Joseph Thomson, the surviving husband, has filed an answer in which he takes the position that the writings in question were not testamentary in character and therefore not codicils to the will. He also contends that the second writing did not constitute a reëxecution or republication of the will.

The matter came on for hearing on petition and answer on December 8, 1958, no testimony being offered by either side.

" 'A register is a judge, and the admission of a will to probate is a judicial decision, [which] can only be set aside on appeal, and is unimpeachable in any other proceeding,' ": Sebik's Estate, 300 Pa. 45, 47 (1930). See also Szmahl's Estate, 335 Pa. 89, 92 (1939) ; West v. Young, 332 Pa. 248, 251 (1938). He has jurisdiction of the probate of wills in the county for which he has been elected or appointed: Register of Wills Act of June 28, 1951, P. L. 638, sec. 201, 20 PS §1840.201. This jurisdiction is exclusive. Neither the orphans' court nor any other court can deprive him of this power. All testamentary writings must, in the first instance, be submitted to him for probate.

However, having entered a decree of probate, the register of wills has no right to change or modify his decree in order to accept a later writing for probate. Our learned colleague, Judge Hunter, in his scholarly Pennsylvania Orphans' Court Commonplace Book, reviews this problem at page 1122, vol. II:

"The Register of Wills has no power to revoke probate or letters testamentary, when a later will or codicil is presented for probate; appeal to the Orphans' Court from the original decree is the only remedy. Upon appeal, the Orphans' Court having no original jurisdiction of probate may not determine finally the validity of the later writing, but upon prima facie

proof thereof, will open the decree of probate and grant of letters testamentary, and remit the record for proof and hearing before the Register." See Beatty's Estate, 193 Pa. 304 (1899); Crawford v. Schooley, 217 Pa. 429 (1907); Boland's Estate, 99 Pa. Superior Ct. 321 (1930), and the other cases cited by Judge Hunter in support of his statement.

Our responsibility, at this time, is therefore a limited one. Our function is to ascertain whether the notations in question appear, prima facie, to be testamentary in character. If they are not, there is obviously no merit to this appeal. If, on the other hand, we conclude that they are testamentary, we cannot direct that they be admitted to probate. We can only open the decree of probate to enable the register to receive and act upon the questioned writings.

Although a will is often one of the most important documents a citizen is called upon to make in his entire lifetime, many people are extremely careless in the exercise of this responsibility. As a result, we are often confronted with instruments so strange and unorthodox that it is difficult to determine whether they are testamentary or not. This appears to be such a situation.

Blackstone defined a will as a legal declaration of one's intention which he wills to be performed after his death. In McCune's Estate, 265 Pa. 523 (1920), Mr. Justice Stewart indicated this definition is still the most acceptable one.

In Pagel Petition, 13 D. & C. 2d 725, we recently reviewed the question of what constitutes a will. We pointed out that a writing may be a will even though no disposition of property is made thereunder. All that is necessary is that it set forth a legal direction to take effect after death. We referred to Sando Will, 362 Pa. 1 (1949), Douglas' Estate, 303 Pa. 227 (1931), and Rose v. Quick, 30 Pa. 225 (1858), which

held that a writing appointing an executor is a will although no disposition is made of the estate. Accordingly, we held that the writing executed by Pagel, in which he appointed a guardian of his minor son but disposed of no property, was a valid will.

It is well settled that the form of the writing is immaterial. All that is required is that it be testamentary in essence. In Kimmel's Estate, 278 Pa. 435, 438 (1924), the court said:

"While the informal character of a paper is an element in determining whether or not it was intended to be testamentary (Kisecker's Est., 190 Pa. 476), this becomes a matter of no moment when it appears thereby that the decedent's purpose was to make a posthumous gift. On this point the court below well said: 'Deeds, mortgages, letters, powers of attorney, agreements, checks, notes, etc., have all been held to be, in legal effect, wills. Hence, an assignment (Coulter v. Shelmadine, 204 Pa. 120), . . . a deed (Turner v. Scott, 51 Pa. 126), a letter of instructions (Scott's Est., 147 Pa. 89), a power of attorney (Rose v. Quick, 30 Pa. 225), and an informal letter of requests (Knox's Est., 131 Pa. 220), were all held as wills.' "

Counsel for the surviving husband in the present case stresses strongly the fact that the language used by testatrix is purely precatory in nature and makes no disposition of any portion of her estate. It is settled, however, that this does not necessarily destroy the testamentary character of the writing: McKean Estate, 159 Pa. Superior Ct. 409 (1946). See also Hengen's Estate, 337 Pa. 547 (1940) ; Gaston's Estate, 188 Pa. 374 (1898) ; Knox Estate, 131 Pa. 220 (1889) ; Killough Estate, 36 Del. Co. 30 (1949).

In McKean Estate, supra, in which the writing was held to be testamentary, the court placed considerable reliance upon the attending circumstances and said, at page 411:

"The salient facts are that it was placed for safe-keeping with the formal will, that it was addressed to the executor of her estate and not delivered to him during her lifetime."

In studying the problem which confronts us we should, therefore, give consideration to the existing factual situation. It suggests that decedent intended the two notations to have testamentary effect. In the first place, she wrote the word "over" on the face of her will, thus definitely linking the contents of the will with the notations, which were made on the inside of the backer to which the will is stapled. The first notation is addressed to her executor, Sidney, and says, "I trust that you will help to care for Mother during her life-time". The second one starts with the word "Ditto", immediately after the date, and is signed "Carrie L. Thomson", decedent's married name, and requests help so that her other brother's children "have a good and full life". The use of the word "Ditto" may have any one of several connotations. It may mean that the second notation is also addressed to Sidney, the executor. It may have some reference to the subject matter of the will itself. As we have pointed out, it is not for us, at this stage of these proceedings, to endeavor to construe the meaning of testatrix' language. However, it seems obvious from a study of the language of the two nota-tions that decedent desired her brother, who was her sole beneficiary as well as her executor, to take some action to assist her mother and her nephew and niece after she passed on. Whether these instructions are binding upon the brother is not important at this point in the proceedings. This becomes a matter for distribu-tion at the audit of the executor's account. What is important is that they are, in effect, instructions to her executor to become effective upon her death.

We therefore conclude that, under the circumstances of this case, we must hold that contestant has estab-

86

lished, prima facie, that the two notations in question are testamentary in character because they contain instructions which decedent desired her executor to carry out after her death. In reaching this conclusion we refrain from construing the meaning of the writings or determining whether they have any dispositive effect.

We, accordingly, enter the following

*Decree*

And now, December 30, 1958, the appeal of Sidney M. Steiger is sustained and the decree of the register of wills' of November 1, 1957, admitting to probate the undated writing entered in Will Book 846, page 279, is opened to permit the register of wills to receive and act upon a petition for the probate of two later writings dated February 6, 1946, and July 1, 1952, as codicils to the instrument which has been accepted for probate, and the record is remitted to the register for that purpose.