court erred in not leaving the truth of the matter to be determined by a jury. The judgment is reversed and a v. f. d. n. awarded.

---

## Morrow's Estate (No. 1).

*Will—Execution—Signing at end.*

A will is not open to the objection that it is not signed at the end where all of the granting part was on one page with a blank space of two lines at the foot of the page, and at the top of the reverse side was written the usual witness attestation clause, followed by the words, "Witness my hand and seal," and the decedent's signature.

*Will—Alteration—Superscription.*

A will will not be declared void for material alteration where it appears that the alteration was in the handwriting of the scrivener; that the testatrix subsequently republished the will by a codicil, and the subscribing witnesses testified that the alteration was made at the suggestion of the testatrix before execution.

Argued Oct. 31, 1902. Appeal, No. 112, Oct. T., 1902, by Frank Lewis Bridges, from decree of O. C. Allegheny Co., March T., 1902, No. 176, dismissing appeal from register of wills in estate of Nancy A. Morrow, deceased. Before MITCH-ELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Appeal from register of wills.

The facts appear in the opinion of the court below.

HAWKINS, P. J., filed the following opinion: ·

There are two questions involved in this appeal:

1. Whether the fact of the presence of a blank space of two lines at the foot of the first page of the paper propounded renders it inoperative as a will? and

2. Whether there has been sufficient proof of execution— especially in view of an erasure appearing on the face of the original will? The facts are these:

The paper propounded consists of one sheet of foolscap on the obverse and reverse sides of which are written a will dated

1894, and a codicil dated 1900. The will begins at the top of the obverse page, " I, Mrs. Nancy A. Morrow, . . . . do make this my last will and testament in the manner following . . . . " and continues in consecutive paragraphs to within two lines of the bottom where there is a blank without signature; but at the top of the reverse page there is an attestation clause which begins thus : " Signed, sealed and declared by the above named Nancy A. Morrow as her last will and testament . . . . ;" and following this is the signature, " Nancy A. Morrow," and " Witnesses, America W. Wallace and I. N. Forney." Miss Wallace testified that the will was, at the request of Mrs. Morrow, written by Mr. Forney and each paragraph read to her as written, and again read as a whole, before it was signed, and that Mrs. Morrow signed in their presence ; and that they signed as witnesses at her request and in her presence on the day of the will's date. Mr. Forney, the scrivener and other witness, is dead, but his signature was proved by ample testimony.

There also appears in the face of the will an erasure, and the word " Pennsylvania " written over it. Miss Wallace said the word " Allegheny " was erased, and " Pennsylvania " written at the instance of Mrs. Morrow before execution, so that the name of a legatee should read, " The Reformed Episcopal Church of Pennsylvania ; " and Prof. Farrar testified that the paper was in this condition when the codicil was signed.

The evidence leaves no room for doubt, and the court accordingly finds, that the paper as now propounded was " signed, sealed and declared by the above named Nancy A. Morrow, as her last will and testament." The codicil follows on the same page, testator's signature, and runs over on the next page. Its execution is admitted.

Mrs. Morrow died December 21, 1900.

OPINION.

The paper propounded here bears on its face in form and contents the evidence of its own integrity. It is written on the same leaf and in such manner as would commonly be understood as consecutive. It begins with a declaration of purpose which raises a presumption of intended compliance with statutory requirements in the making of wills, and therefore

that dispository and attestation clauses and signature at the end would follow. The testatrix declares that "I, Mrs. Nancy A. Morrow . . . . do make this my last will and testament in the manner following;" and then in fact follow dispositive clauses on the same page. The absence of attestation clause and signature at the foot of the page naturally leads to inquiry as to the completion of her purpose, and this is found on the reverse side of the leaf. The fact that an attestation clause and signature were written on the same leaf as the declaratory and dispository portion of the will; that they were written at the top of the reverse page; and purport to have been "signed, sealed and declared by the above named Nancy A. Morrow as her last will and testament," leave no room for doubt that they had reference to, and were the completion of, the will begun on the obverse page of the leaf. "The above named Nancy A. Morrow" can only be that Nancy A. Morrow whose name appears in the beginning, and whose signature follows the attestation clause, as testatrix. Identity of name implies identity of person. The attestation clause is in the position in which the majority of persons would expect to find it, and would be vain and useless without this antecedent. Who that writes or reads a letter does not involuntarily turn over leaf after leaf seeking the continuation until he comes to the signature ? How many are there who from force of habit, or prudence, or economy, or necessity, have written wills on both sides of a leaf of foolscap, and how many titles have passed, without a thought of invalidity ? After all it is the common understanding and practice which must determine questions of this kind. There have been hundreds of wills written in circumstances of necessity beyond professional aid, and in which the application of technical rules would produce hardships not to be endured.

While leaving a blank at the foot of the first page was imprudent in that it afforded an opportunity for fraudulent practice, it certainly would not of itself invalidate the will. "The general principle," said Mr. Justice CLARK in Baker's App., 107 Pa. 381, "has been clearly established that a will is to be read in such order of pages or paragraphs as the testator manifestly intended, and the coherence and adaptation of the facts clearly require. In writing a will upon pages of foolscap

paper, a testator may or may not conform to the order of the consecutive pages of the folio; there is no law which binds him in this respect; he may begin upon the fourth page and conclude upon the first, or he may commence on the first, continue upon the third and conclude upon the second, but in whatever order of pages it may be written however, it is to be read . . . . according to the internal sense, the coherence or adaptation of parts." It was accordingly held in Ginder v. Farnum, 10 Pa. 98, that where a will is written on several sheets of paper fastened together with a string, proof by two witnesses of the signature of the testator at the end thereof, is sufficient. So in Wikoff's App., 15 Pa. 281, it was held that a will written on distinct pieces of paper in whose arrangement there was even some confusion, is good if they are connected by their internal sense. So where the name of the legatee was written, not in the body of a codicil, but was indorsed on the envelope in which the codicil had been placed, the two together constitute a valid will: Fosselman v. Elder, 98 Pa. 159. So where, as here, the whole of the disposing portion of a will was written on the first page of a double sheet of foolscap; the second and third pages were blank; and the attestation clause with the signatures of the testator and witnesses were on the fourth page, it was held there was a good execution : Re Goods of Fuller, L. R. Probate (1892), 377. " An instrument is signed at the end," said Mr. Justice LEONARD, in In re Gilman, 38 Barbour, 364, " when nothing intervenes between the instrument and the subscription. Who shall undertake judicially to say that the subscription shall be one eighth of an inch, half an inch, two inches, or ten inches from the last line of the instrument? The distance from the last line has not been fixed by statute. The place named by the statute is the end." The result of the authorities is summed up by Underhill on Wills, sec. 185, by the statement that the interposition of a blank space between the dispository portion of the will, and the testator's signature is never material. The test of integrity of the will is, to use Mr. Justice CLARK's phrase, the "internal sense; " and as has been shown, there is enough on the face of this will to stand the test.

It was said in Wikoff's App., supra, and repeated in Linnard's App., 93 Pa. 313, that interlineations made in testatrix's

handwriting are presumed to have been made at or before the time which the will was prepared for the final act. Liberality of construction in this respect is shown in the extension of the presumption to interlineations in pencil in the later case of Tomlinson's Est., 133 Pa. 245, and there is just as much reason for its application where the whole body of the will is in the scrivener's handwriting. It was probably for this reason that the scrivener's testimony was admitted without question in Baker's App. This testatrix having herself trusted the scrivener to write her will, it would be strange indeed if those claiming under her could discredit her judgment and shift the burden of proof on proponents by mere assumption. This presumption is strengthened, if not made conclusive, by the republication of the will long after the scrivener's death; for being in the scrivener's handwriting, the will must have been in the condition which it now is, with the erasure and superscription appearing on its face, when the republication took place, and therefore with testatrix's knowledge and approbation. The presumption was further strengthened by the direct testimony of Professor Farrar that the will was in the same condition when the codicil was made as it is now in respect of erasure and the superscription. It was urged in Linnard's App., supra, that as a matter of fact the alteration there was not made before the original paper was signed; but the court said that it did not follow from this that they were not made before the last or some of the preceding codicils were executed. "Indeed, the fair inference from the paper itself," said Mr. Justice STERRETT, "would seem to be that they were made before the second codicil. As has already been observed, the clause stricken out of the first codicil, before it was completed, refers to the canceled legacy in the second item of the original will, so that it may be fairly inferred that this was done before the testatrix signed what now stands as the first codicil; and it is quite probable that the alterations in the original paper were all made at the same time. But however that may be, the presumption is that she made them before she affixed her name to the last codicil. Her signature to that having been duly proved should, in the absence of evidence to the contrary, be regarded as her final act." But in addition to all this the testimony of the surviving witness leaves

no room for doubt that the erasure and superscription thereon were made at Mrs. Morrow's suggestion before execution.

3. The suggestion of defective proof of execution is also without merit. The surviving witness explained very fully and intelligently the circumstances attending the execution, and this with a clear proof of the handwriting of the deceased witness, filled the statutory requirement. If more be required it may be found in the admission of the execution of the codicil which amounted to a republication of the original will.

It follows:

1. That the blank space in question is immaterial in this contest;

2. That on presumption and direct proof the erasure was made before execution of the will;

3. That proof of execution was in compliance with the statutory requirement; and

4. That consequently the appeal from probate must be dismissed.

*Error assigned* was decree dismissing the appeal.

*Morton Hunter*, with him *W. A. Hudson* and *Joseph Howley*, for appellant.—The will was not signed at the end thereof: Baker's App., 107 Pa. 381; Younger v. Duffie, 94 N. Y. 535.

*Frank W. Smith*, with him *James S. Young* and *William H. Dodds*, for appellee.

Per CURIAM, January 5, 1903:

The decree is affirmed on the opinion of the court below.

---

204    484
29 SC  108

## Morrow's Estate (No. 2).

*Will—Gift to charity—Revocation.*

Where a testatrix gives a legacy to a charitable institution and divides the remainder of her estate among six charities, share and share alike, and six years afterwards executes a codicil revoking the legacy to the charitable institution, and dividing the residue of her estate into seven portions, giving one to a stepson, and the remaining six to the six charities men-