## Kimmel's Estate.

*Wills—Probate—Issue devisavit vel non—Signature at end—Informal signature—Testamentary intent—Province of court and jury—Contingency—Passed or existing contingency—Act of June 7, 1917, section 2, P. L. 403.*

1. Accuracy in the transmission of a testator's wishes, authentication of the instrument transmitting them, identification of the testator, and certainty as to his completed testamentary purpose, is the design of section 2 of the Wills Act of June 7, 1917, P. L. 403, in requiring that no paper shall be probated as a will unless it is duly signed at the end thereof.

2. The requirement of signing at the end of a will was intended to designate the place of signature, rather than to prescribe the character of it.

3. If a testator, instead of signing his christian and family names to a letter which is testamentary, uses the word "father" as a completed signature to the document, it should be probated as his will.

4. If however, it does not appear that there was an intent to execute the paper as a completed document, it should not be probated.

5. While the informal nature of such a letter is an element in determining whether or not it was intended to be testamentary, this becomes a matter of no moment if it appears, by the paper itself, that decedent's purpose was to make a posthumous gift.

6. When the facts are not disputed, the question of testamentary intent is one of law for the court.

7. Where, in a testamentary paper, a gift is made to depend on the happening of a contingency which had passed, the paper should not be probated; but if the contingency still existed at the time of death it should be probated.

8. Plate's Estate, 148 Pa. 55, and Brennan's Estate, 244 Pa. 574, explained.

Argued October 2, 1923. Appeal, No. 124, Oct. T., 1923, by Oliver B. Kimmel, from decree of O. C. Cambria Co., No.13445, sustaining appeal from register of wills in estate of Harry A. Kimmel, deceased. Before MOSCH-ZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Appeal from decision of Register of Wills refusing to admit to probate a paper offered as a will. Before REED, P. J.

The opinion of the Supreme Court states the facts.

Appeal sustained and register directed to receive paper for probate. Oliver B. Kimmel, son of testator, appealed.

*Error assigned* was, inter alia, decree, quoting it.

*George E. Wolfe*, for appellant.—The letter was not testamentary in character: Turner v. Scott, 51 Pa. 126; Schad's App., 88 Pa. 111; Scott's Est., 147 Pa. 89; Rose v. Quirk, 30 Pa. 225; Knox's Est., 131 Pa. 220; Kisecker's Est., 190 Pa. 476; McCune's Est., 265 Pa. 523; Patterson v. English, 71 Pa. 454; Morrow's App., 116 Pa. 440; Davis's Est., 275 Pa. 126; Simcox's Est., 56 Pgh. L. J. 78.

The paper was not properly signed as required by law in order to constitute it a will: Knox's Est., 131 Pa. 220; Brennan's Est., 244 Pa. 574.

*Russell R. Yost,* of *Graham & Yost,* for appellees.

OPINION BY MR. JUSTICE SIMPSON, January 7, 1924:

One of decedent's heirs at law appeals from a decree of the orphans' court, directing the register of wills to probate the following letter:

"Johnstown, Dec 12

"The Kimmel Bro. and Famly

"We are all well as you can espec fore the time of the Year. I received you kind & welcome letter from Geo & Irvin all OK glad you poot your Pork down in Pickle it is the true way to keep meet every piece gets the same, now always poot it down that way & you will not miss it & you will have good pork fore smoking you can keep it from butchern to butchern the hole year round. Boys, I wont agree with you about the open winter I think we are gone to have one of the hardest. Plenty of snow & Verry cold verry cold. I dont want to see it this way but it will will come see to the old sow & take her away when the time comes well I cant say if I will come over yet. I will wright in my next letter it may be to ruff we will see in the next letter if I come I have some very valuable papers I want you to keep fore me so if enny thing hapens all the scock money in the 3 Bank liberty lones Post office stamps and my home on Horner St goes to George Darl & Irvin Kepp this letter lock it up it may help you out. Earl sent after his Christmas Tree & Trimmings I sent them he is in the Post office in Phila working.

"Will clost your Truly
"Father."

This letter was mailed by decedent at Johnstown, Pa., on the morning of its date,—Monday, December 12, 1921,—to two of his children, George and Irvin who were named in it as beneficiaries; the envelope being addressed to them at their residence in Glencoe, Pa. He died suddenly on the afternoon of the same day.

Two questions are raised: 1st. Is the paper testamentary in character? 2d. Is the signature to it a suffi-

cient compliance with our Wills Act? Before answering them directly, there are a few principles, now well settled, which, perhaps, should be preliminarily stated.

While the informal character of a paper is an element in determining whether or not it was intended to be testamentary (Kisecker's Est., 190 Pa. 476), this becomes a matter of no moment when it appears thereby that the decedent's purpose was to make a posthumous gift. On this point the court below well said: "Deeds, mortgages, letters, powers of attorney, agreements, checks, notes, etc., have all been held to be, in legal effect, wills. Hence, an assignment (Coulter v. Shelmadine, 204 Pa. 120), ......a deed (Turner v. Scott, 51 Pa. 126), a letter of instructions (Scott's Est., 147 Pa. 89), a power of attorney (Rose v. Quick, 30 Pa. 225), and an informal letter of requests (Knox's Est., 131 Pa. 220), were all held as wills."

It is equally clear that where, as here, the words "if enny thing hapens" condition the gift, they strongly support the idea of a testamentary intent; indeed they exactly state what is expressed in or must be implied from every will. True, if the particular contingency stated in a paper, as the condition upon which it shall become effective, has never in fact occurred, it will not be admitted to probate: Morrow's App., 116 Pa. 440; Forquer's Est., 216 Pa. 331. In the present case, however, it is clear the contingency, "if enny thing hapens," was still existing when testator died suddenly on the same day he wrote and mailed the letter; hence, the facts not being disputed, the question of testamentary intent was one of law for the court: Davis's Est., 275 Pa. 126.

As is often the case in holographic wills of an informal character, much of' that which is written is not dispositive; and the difficulty, in ascertaining the writer's intent, arises largely from the fact, that he has had little, if any, knowledge of either law, punctuation or grammar. In the present case this is apparent from the paper itself; and in this light the language now quoted must be

construed: "I think we are gone to have one of the hardest [winters] Plenty of snow and Verry cold verry cold. I don't want to see it this way but it will come......well I cant say if I will come over yet. I will wright in my next letter it may be to ruff we will see in the next letter if I come I have some very valuable papers I want you to keep fore me so if enny thing hapens all...... [the real and personal property specified] goes to George Darl and Irvin Kepp this letter lock it up it may help you out."

When resolved into plainer English, it is clear to us that all of the quotation, preceding the words "I have some very valuable papers," relate to the predicted bad weather, a doubt as to whether decedent will be able to go to Glencoe because of it, and a possible resolution of it in his next letter; the present one stating "we will see in the next letter if I come." This being so, the clause relating to the valuable papers begins a new subject of thought, and since the clearly dispositive gifts which follow are made dependent on no other contingency than "if enny thing hapens," and death did happen suddenly on the same day, the paper, so far as respects those gifts, must be treated as testamentary.

It is difficult to understand how the decedent, probably expecting an early demise,—as appears by the letter itself, and the fact of his sickness and inability to work, during the last three days of the first or second week preceding,—could have possibly meant anything else than a testamentary gift, when he said "so if enny thing hapens [the property specified] goes to George Darl and Irvin"; and why, if this was not intended to be effective in and of itself, he should have sent it to two of the distributees named in it, telling them to "Kepp this letter lock it up it may help you out."

The second question to be determined, depends on the proper construction of section 2 of the Wills Act of June 7, 1917, P. L. 403, 405,—which is a reënactment of section 6 of the Wills Act of April 8, 1833, P. L. 249,—reading as follows: "Every will shall be in writing, and

unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof, or by some person in his presence and by his express direction." The letter, now being considered, was all in the handwriting of decedent, including the word "Father," at the end of it; and hence the point to be decided would appear to resolve itself into this: Does the word "Father," when taken in connection with the contents of the paper, show that it was "signed by him"? When stated thus bluntly,—in the very language of the statute,—the answer seems free from doubt; but since we said in Brennan's Est., 244 Pa. 574, 581, that "Signing in the usual acceptation of the word and in the sense in which, presumably, it is used in the act, is the writing of a name or the affixing of what is meant as a signature," we must go further and determine whether or not the word "Father" was "meant as a signature."

In Vernon v. Kirk, 30 Pa. 218, 223, it is said, "the purpose of the legislature seems rather to have been to designate the place where the signature should be, to wit, at the end of the will, than to prescribe the manner in which it should be made, . . . . . . It was not, as was supposed in the earlier cases, to furnish, in the handwriting, evidence of identity, and protection against fraud; for the name might be signed by the testator, or by another at his request, in which last case no such proof is deducible from the handwriting. The authentication of the instrument was left to the witnesses . . . . . . ; while the place of the signature is rigidly defined, its mode is left unfettered."

In Knox's Est., 131 Pa. 220, 229, this subject was fully considered, and we there said: "The purposes of the Act of 1833 were accuracy in the transmission of the testator's wishes, the authentication of the instrument transmitting them, the identification of the testator, and certainty as to his completed testamentary purpose. The first was attained by requiring writing instead of mere

memory of witnesses, the second and third by the signature of testator, and the last by placing the signature at the end of the instrument. The first two requirements were derived from the English statute; the third was new, (since followed by the Act of 1 Vict. c. 26) and was the result of experience of the dangers of having mere memoranda or incomplete directions taken for the expression of final intention: Baker's App., 107 Pa. 381; Vernon v. Kirk, 30 Pa. 223. These being the purposes of the act, and the legislature not having concerned itself with what should be deemed a signing, we must look dehors the statute for a definition. As already said, the act is founded on the statute of frauds, 29 Car. II. Under that act it has been held that the signing may be by a mark, or by initials only, or by a fictitious or assumed name, or by a name different from that by which the testator is designated in the body of the will: 1 Jarman on Wills 78; 1 Redf. on Wills, c. 6, section 18, and cases there cited."

This has been approved and followed in Plate's Estate, 148 Pa. 55; Swire's Est., 225 Pa. 188, 192; and Churchill's Est., 260 Pa. 94, 100, and has never been doubted. If, then, the word "Father" was intended as a completed signature to this particular character of paper, it answers all the purposes of the Wills Act. That it was so intended we have no doubt. It was the method employed by decedent in signing all such letters, and was mailed by him as a finished document. In these respects it varies from Brennan's Estate, supra, so much relied on by appellant, where the writing of "your misserable father," was construed to be not a signature, but part of an unfinished paper, which decedent retained, and to which his signature was not subsequently attached.

It is of course true,—and upon this point Plate's Est., supra, and Brennan's Est., supra, were decided,—that while "exactly what constitutes a signing has never been reduced to a judicial formula," if that which is written at the end of the paper is not "a full and complete signa-

ture according to the intention and understanding of the testator" it is not a compliance with the statute. The same cases decide, however, it will be held to be so "if the intent to execute is apparent." In the present case, as already pointed out, testator used the word "Father" as a full and complete signature, and mailed the paper as a finished document. True, a formal will would not be so executed; but this is not a formal will. It is a letter, signed by him in the way he executed all such letters, and from this circumstance, his "intent to execute is apparent" beyond all question.

The decree of the court below is affirmed, and the appeal is dismissed, the costs in this court to be paid by the estate of Harry A. Kimmel, deceased.