## Dietterich's Estate.

Argued April 15, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, JAMES and RHODES, JJ.

*John E. Evans, Sr.,* with him *Samuel Wilson* and
*John M. Myers,* for appellant.

*Geo. F. Whitmer,* for appellee.

OPINION BY RHODES, J., July 15, 1937:

The question which is raised on this appeal is whether
the paper which the register of wills of Clarion County
refused to admit to probate as the last will and testa-
ment of Esther A. Dietterich met the statutory require-
ment of being signed "at the end thereof." The orphans'
court, on appeal from the action of the register of wills,
held that the paper offered had not been signed at the
end thereof, refused to admit the same to probate, and
sustained the register's refusal to admit to probate the
paper offered as a will. From the decree of the orphans'
court this appeal was taken by Esther S. Huff Haugh,
one of the devisees named in the alleged will.

Esther A. Dietterich died on September 16, 1934,
domiciled in Clarion County. The paper bears the date
of August 19, 1924. It is a printed form of a will. By
direction of the decedent, a Mrs. Chambers, at her home

where decedent was then living, filled out the first page of the printed form, which ended with the beginning of the paragraph relating to the appointment of an executor. Therein she inserted the name of Howard K. Dietterich, son of the decedent. On the reverse side of the printed form is printed a completion of this appointment and also a testimonium clause in which she inserted, in the spaces provided therefor, the name of the decedent and the day, month, and year. Thereafter there was printed a line with a seal. A printed attestation clause followed, in which she inserted in the blank space the name of the decedent, with two lines thereafter for witnesses. Some time later in 1924 the decedent took the paper, as prepared by Mrs. Chambers, to her neighbors, A. E. Lynn and Florence Lynn. In their presence she told them that it was her last will and testament, and in their presence she wrote her name in that portion of the printed form which was intended for the endorsement under the printed words "Will of," at the same time stating to Mr. and Mrs. Lynn that she requested them to witness it. Immediately under the name of the decedent, A. E. Lynn and Florence Lynn signed their names.

The testimonium and attestation clauses appear as follows: "IN WITNESS WHEREOF, I, Esther Dietterich, the testatrix above named, have hereunto subscribed my name and affixed my seal, the 19th day of August in the year of our Lord one thousand nine hundred and twenty-four.

"......................... (Seal)

"Signed, sealed, published and declared by the above named Esther Dietterich as and for her Last Will and Testament in the presence of us, who have hereunto subscribed our names at her request as witnesses thereto, in the presence of the said testatrix, and of each other.

". . . . . . . . . . . . . . . . . . . . . . . . . . ."

". . . . . . . . . . . . . . . . . . . . . . . . . . ."

All the signatures appear at the place on the paper used for the endorsement to indicate the name of the testator. When the paper is folded the signatures of the decedent and the witnesses appear in vertical position:

"WILL

"of

"Esther A. Dietterich

"A. E. Lynn

"Florence Lynn"

Immediately below the signatures are the printed words, "Proved and Filed . . . . . . . ., 19. . . . and recorded in Will Book . . . . . ., page . . . . . ." with a line for signature followed by the word "Register."

There was no signature following the testimonium clause, nor did the witnesses sign the attestation clause.

Section 2 of the Wills Act of June 7, 1917, P. L. 403 (20 PS § 191) reads as follows: "Every will shall be in writing, and, unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof, or by some person in his presence and by his express direction; and, in all cases, shall be proved by the oaths or affirmations of two or more competent witnesses; otherwise, such will shall be of no effect." This is a reenactment of section 6 of the Wills Act of April 8, 1833, P. L. 249, Purdon's Dig. vol. 4, p. 5120. The place of the signature is thereby rigidly defined. *Vernon v. Kirk*, 30 Pa. 218, 223. See, also, *Hays v. Harden*, 6 Pa. 409; *Wikoff's Appeal*, 15 Pa. 281; *Heise v. Heise*, 31 Pa. 246; *Knox's Estate*, 131 Pa. 220, 18 A. 1021; *Taylor's Estate*, 230 Pa. 346, 79 A. 632; *Seiter's Estate*, 265 Pa. 202, 108 A. 614; *Maginn's Estate*, 278 Pa. 89, 122 A. 264; *Kimmel's Estate*, 278 Pa. 435, 123 A. 405.

We may properly assume that the decedent intended to make a will, and that she thought she was executing

the paper as a will, which was offered for probate. Her signature appears thereon together with those of the Lynns. Notwithstanding such intention, was the result a valid will?

It is appellant's contention that the purpose of the statute is to have a will signed at the end thereof so as to denote that the instrument is complete, that when the signing is after the entire will, even including the attestation clause, the writing is signed as the will of the testator, and that the paper here offered for probate met the requirement of the statute.

We find no precise precedent ruling the instant case. The place of signature is most unusual. It is quite obvious that decedent's signature does not appear at the place which must manifestly be regarded as the end of her will. It was not written at the end as the obviously inherent sense of the instrument required.

The authorities which appellant has cited, and upon which she relies, are readily distinguishable and are not controlling. In *Morrow's Estate* (No. 1), 204 Pa. 479, 54 A. 313, the will was written on one page, and at the top of the reverse side was written the usual attestation clause followed by testatrix' signature and the names of the two witnesses. It was there held, 204 Pa. 479, at page 481: "The fact that an attestation clause and signature were written on the same leaf as the declaratory and dispository portion of the will; that they were written at the top of the reverse page; and purport to have been 'signed, sealed and declared by the above named Nancy A. Morrow as her last will and testament,' leave no room for doubt that they had reference to, and were the completion of, the will begun on the obverse page of the leaf." In *Swire's Estate*, 225 Pa. 188, 73 A. 1110, the signature of the testatrix appeared at the end of the codicil and after the testimonium clause. It was held that there was a compliance with the statutory requirement that a will be

signed at the end thereof notwithstanding some marginal bequests on the same page above the signature. In *Brennan's Estate*, 244 Pa. 574, 91 A. 220, it was held that the paper produced for probate was not actually signed, nor was the failure to sign accounted for as the statute required. In *David S. Baker's Appeal*, 107 Pa. 381, the will was written on the first and third pages of a folio of foolscap paper, and signed at the end of the third page. The fourth page of the paper contained another and further testamentary provision. It was held that, by force of the reference in the body of the will, and the clear identification of the matter referred to, the writing on the fourth page was, ipso facto, drawn into the body of the will, and constituted the fourth item or clause thereof; and although the instrument, thus formed, was not signed by the testator at the end thereof in point of space, it was signed at the end of the will in point of fact. In *Stinson's Estate*, 228 Pa. 475, 77 A. 807, the testatrix, after having written the first page, skipped the second, proceeded to the third, and, having reached the bottom of it, returned to the second, and, when she had completed the disposition of her estate at about the middle of that page, signed her name there in the presence of two witnesses. It was held that the sequence of her will was unbroken from the first line on the first page to the place where she signed her name on the second, which was the end.

The statutory requirement that the person making a will shall sign the same at the end thereof is mandatory. Intention cannot prevail over the statute. The requirement of the act was not met by decedent's signature on the back of the printed form notwithstanding her intention at the time she placed it there.

In *Wineland's Appeal*, 118 Pa. 37, 12 A. 301, the alleged will was signed by the decedent, but after the signature were the following words: "I will that Cephas Lash and Henry Wineland be my executors."

The testator's signature did not appear thereafter, and after these words came the attestation clause which was in the usual form. In reversing the court below in directing the register to admit the paper to probate as the last will and testament of the decedent, the Supreme Court said, 118 Pa. 37, at page 41: "Our act of 1833 as well as the statute of Vict. are in part borrowed from the British statute of frauds, two sections of which have been so evaded by judicial construction as to be practically repealed. We do not propose that the act of 1833 shall meet with the same fate. The legislature have laid down a rule so plain that it cannot be evaded without a clear violation of its terms. No room is left for judicial construction or interpretation. It says a will must be signed at the end thereof, and that's the end of it." See proviso in section 2 of the Wills Act of June 7, 1917, P. L. 403 (20 PS § 191).

In *Churchill's Estate,* 260 Pa. 94, 103 A. 533, the paper admitted to probate was a printed form of a will, the written portions having been filled in by the decedent in his handwriting. He did not sign his name immediately below the testimonium clause and opposite the word "seal," but he did write his name in three blank spaces in the paper; the first at the top, and then in the testimonium and attestation clauses. The execution of the instrument appeared as follows, 260 Pa. 94, at page 98: "In witness whereof, I, *P. Churchill,*[1] the Testator above named, have hereunto subscribed my name and affixed my seal, the fourteenth day of April in the year of our Lord one thousand nine hundred 14— 1914.

"........................(SEAL)

"Signed, sealed, published, and declared by the above named *P. Churchill,*[1] as and for his last will and Testament, in the presence of us, who have hereunto subscribed our names at his request as witnesses there-

to in the presence of the said Testate and of each other.

"*J. D. Spicher*[1]

"*John Rankin.*"[1]

The Supreme Court, in an opinion by Mr. Chief Justice BROWN, said, 260 Pa. 94, at page 101: "The decedent may have thought he had made a will, but the statute says he had not. The question is not one of his intention, but of what he actually did, or rather what he failed to do. He failed to sign the paper at the end thereof, and this essential requirement of the statute is not met by the insertion of his name in his own handwriting in three blank spaces in the printed form of the paper which he may have intended to use in executing his will. 'It may happen, even frequently, that genuine wills, namely, wills truly expressing the intentions of the testators, are made without observations of the required forms; and whenever that happens, the genuine intention is frustrated by the act of the legislature, of which the general object is to give effect to the intention. The courts must consider that the legislature, having regard to all probable circumstances, has thought it best, and has therefore determined, to run the risk of frustrating the intention sometimes, in preference to the risk of giving effect to or facilitating the formation of spurious wills, by the absence of forms. It is supposed, and that authoritatively, that the evil of defeating the intention in some cases, by requiring forms, is less than the evil probably to arise by giving validity to wills made without any form in all cases': *Smee v. Bryer,* 6 Moore P. C. 404."

In the instant case, as in the Churchill case, supra, the printed form which was used had a line with a seal immediately following the testimonium clause. This clearly indicated where the signature of the decedent should be affixed at the end of the will. This was the

---

[1] Italics denote actual signatures of testator and witnesses.

end of the will in the usual acceptation of the meaning of those words, and the "logical end of the language used": *Swire's Estate,* supra, 225 Pa. 188, at page 191. The testimonium clause had been filled out with the name of the decedent and the day, month, and year. In the attestation clause her name had also been inserted by the scrivener. Instead of signing her name at what is clearly the end of the instrument, and on the line placed there for her signature, she and her witnesses signed the paper on the back at a place which was printed for the purpose of endorsements. The place where she signed had no relationship to the nature of the will or its contents.

We agree with the conclusion of the court below as stated in its opinion: "There is no question here that this decedent intended to make this paper her will, but she failed to live up to the statutory requirement of signing her name at the end of it."

Decree is affirmed, at the cost of appellant.