### Reynard Estate

*J. J. Benedict,* for accountant.

*D. M. Anderson, Jr.,* for contestants.

ANDERSON, P. J., March 10, 1952. — This estate comes before the court on an appeal from its probate as the last will of William B. Reynard, a writing ad-

mittedly all in the handwriting of such decedent with the exception of names and addresses of two persons other than testator, which intervene between logical end of testament and his signature. The contents and arrangement of such paper (a single lined sheet of ordinary school child's tablet) are as follows:

(By handwriting in ink.)

Nov. 30  1949

I William B. Reynard a Patient at V. A. Hostital at aspinwall, Being of sound mind here by give this as my last will and testament.

    1   The Chevelet car to Robert Reynard my brothe and Television and half of the money the bank.

    The ~~Property~~

    The  Property half to to my Sister N. E. Dodge and half to Robert my brother.

    The bonds to Robert and Anna which is Brother and Sister.

            John A. Bane
            164 Collins st.
            Johnstown Pa.
            Charles P. Kirchner
            4516 Cordy 1M PGH

William B. Reynard
    Veterns  hospital
    Aspinwall Pa.

The signatures as they appear above are arranged spatially, as is will, per line, as in actual paper probated.

Two grounds were given for appeal: (1) Undue influence; (2) that it was not signed by testator at the end, as required by Wills Act.

After formal introduction into evidence of writing and its probation, evidence was taken at hearing on

question of undue influence. On the other issue, the only evidence offered was that paper, except for names and addresses of persons whose signatures appear between the last line of the will and the signature of decedent, were in the genuine handwriting of decedent.

It is easily apparent from examination of the record, that the evidence of undue influence is insufficient to admit of submission of such issue to a jury.

The issue as to whether a signature to a will complies with requirements of the Wills Act of June 7, 1917, P. L. 403, is a pure question of law to be determined from an examination of the will itself, and the position of signature as it appears on writing and its relationship in context, in time of placing, and spatially, to other parts of instrument may not be explained by extrinsic evidence: Griffith Will, 358 Pa. 474-482; Brown Estate, 347 Pa. 244; Coyne Will, 349 Pa. 331.

Also, the exact position of the signature on the writing in issue is not the controlling factor. The appellate courts of this Commonwealth have consistently held that the end of a will is the logical end of the disposition in its obvious inherent sense. It is not necessarily the point farthest removed from the beginning: Baldwin Will, 357 Pa. 432-437, and cases there cited.

In none of the cases called to the court's attention have the same factual situations been found as is found here except in O'Malley's Estate, 98 Pitts. L. J. 347, which will be later discussed.

In Churchill's Estate, 260 Pa. 94, where probate of questioned writing was refused, it appears that testatrix used a prepared form, and failed to sign her name in position intended to be so used, but did write it in in the space in witness clause where ordinarily the name of person making will is typed in. The court held that regardless of what might have been in testatrix's mind or her intention, her signature at such place could only be interpreted as "descriptio personæ", since its pres-

ence there could not be explained by outside testimony.

Bridge's Estate, 139 Pa. Superior Ct. 606, has the same factual situation except the will proper was filled out by a scrivener.

In Brown Estate, 347 Pa. 244, probate was attempted of a bank deposit signature card, signed by decedent, but which had typed in, opposite her signature, and below printed words of card, words which were dispositive in nature and bore no connection "in internal sense" with such printed words. An inspection of such typing, although oral evidence was offered to prove contrary, had appearance of having been written in point of time after signature and probate was refused (because of possibility of fraud) even though the court was satisfied that writing was testamentary in nature and was so intended.

In Dietterich's Estate, 127 Pa. Superior Ct. 315, the factual situation is quite different. In such issue decedent had signed his name on back of will, at place intended merely to indicate identity of maker of will, and witness' signatures appeared immediately below. The court there held that signature so far removed from the place that is manifestly the end of the will, regardless of intention of decedent, is not a compliance with statutory provisions.

In Wineland's Appeal, 118 Pa. 37, there were dispositive words after signature. By later statute that situation does not prevent the probating of words of will preceding signature, which was not true then. It was in such case that the court in referring to this statute, made the often quoted statement: "It says a will must be signed at the end thereof, and that's the end of it."

Coyne Will, 349 Pa. 331 (which, as is true of cases just discussed, was cited by appellant in support of his position that will was not signed at end) also presents entirely different facts from those in present issue and

is of no aid save as it subscribes to this doctrine, quoting from opinion in Brown's Estate:

"The Wills Act requires signing at the end. The purpose of the Act was to remove all *possibility* of fraud."

In Covington Estate, 348 Pa. 1, facts were a husband and wife had committed suicide and officers investigating case found on kitchen table a sealed envelope inside of which were three loose sheets of paper, one of which recited it was their last will, and both had signed at end of another page. And on placing third sheet between these two there was a coherent and complete disposal of their entire estate. In sustaining probate of such sheets the court stated, page 15:

"To adopt judicially the 'possibility of fraud' test in 'will cases' means in practical effect that if the contestant of *any* will can show that the challenged will was so made that fraud *might have been perpetrated* in its making its invalidation becomes a very simple procedural matter."

The Brown case, supra, is distinguished because, allegedly in such case the instrument itself indicated possibility that it had not been signed properly.

In Baldwin Will, 357 Pa. 432, the Covington Estate case is distinguished by the presence, in the earlier, and lack in the latter, of internal reference of detached sheets to one containing signature of decedent.

From these cases and many other decisions of our appellate courts, it is our conclusion that each case where position of signature is the issue must be separately tested as to compliance with statutory requirements, to determine whether on its face it discloses that it was not signed at either spatial or logical end of testament.

In such a case, in words of our Supreme Court in Wineland's Appeal, supra, it is not signed at the end and "that's the end of it"

But in single page cases, where will is signed at the spatial end, is there anything apparent on examination of the document in question that would, as in Brown's Estate, supra, indicate, that because of its position and relationship to part preceding it, or attempted to be inserted before it, the paper was not signed with testamentary intent or was regardless of certainty of testamentary intent so signed that there was thereby created an apparent possibility that intervening words, or those sought to be intervened, could have been fraudulently inserted.

If that possibility exists then such decisions seem to hold that regardless of the fact that no fraud is charged, and desire of testator may be frustrated thereby, probate should be refused. It is not our interpretation of such decisions that possibility of fraud must be extinct but that writing itself must not indicate possible presence of fraud. And as corollary to such test that the mere presence of sufficient space between close of dispositive words and signature of testator to admit of a fraudulent insertion being made, is not, of itself, necessarily, basis for an arbitrary refusal to probate.

The O'Malley case, recently decided by the majority of judges of the Orphans' Court of Allegheny County, and reported in 98 Pitts. L. J. 347, is in its facts practically on all fours with present case. In such case the will was not entirely in handwriting of testatrix but the words "Witnessed by C. T. Getz", appeared at logical end of the will and immediately preceding signature of testator. In reversing the trial judge who denied probate of writing, the majority held the will was signed in compliance with statute even though signature of witness intervened between end of will proper and signature of decedent.

The trial court and majority of the court en banc apparently agree upon the law ruling such cases but differ in its application. The trial court held that sig-

nature of decedent more nearly related to attestation clause than anything else and although a physical and spatial end of the writing, it had no inherent connection with testamentary language, while the majority of the court held that the paper evidenced that Getz was but a witness and his signing in the place he did did not violate any statutory provision, and eliminating it from consideration, the will was properly executed. We are in accord with such conclusion.

The instant case presents in some respects a stronger set of facts than the O'Malley case did. The writing opens with the statement that it is the will of decedent. All of the writing except witness' signatures and addresses is admittedly in his own handwriting; there is the fact that there is an inherent connection between his signature and the writing itself which excludes possibility of fraud, and also the fact that the presence of the other signatures can only be reasonably explained by viewing them as signatures of witnesses. As such they must have signed before or after testator. If they signed first, they violated no statutory requirement and forced testator to sign either opposite or below them, and if they signed after testator surely such act, failing statutory provision to the contrary, may not be permitted to destroy an otherwise duly executed will.

Actually, the placing of their signatures where they did should serve to discourage, as too evident, any fraudulent attempt to insert any new matter rather than to be used to destroy the admitted intent of testator to make this writing his will, by holding spatial separation between logical end of the will and signature of testator; permitting intervention of these signatures created such opportunity for fraud as to require denial of probate.

On basis of such discussion the court, therefore, finds as

*Matters of Fact*

1. That the writing in issue is all in handwriting of deceased testator with exception of the other signatures appearing thereon, and the accompanying addresses, and as

*Matters of Law*

1. That evidence given is insufficient to permit of submission of issue of undue influence to a jury.

2. That such writing is signed by testator at the end thereof within requirement of the statute of this Commonwealth.

It is, therefore, ordered and decreed that this appeal from the action of the register of wills in admitting to probate the writing involved as the last will and testament of William B. Reynard, be and the same is hereby dismissed. Costs to be paid by the estate.